**NATIONAL LABOR RELATIONS BOARD v. SUPERIOR CO., Inc.**

No. 11461.

United States Court of Appeals
Sixth Circuit.

Sept. 19, 1952.

40

Philip Fusco, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Bernard Dunau, and Alice An-

drews, Washington, D. C., on the brief), for petitioner.

Henry G. Friedlander, New York City (Henry G. Friedlander, New York City, on the brief), for respondent.

Before SIMONS, Chief Judge, and Mc-ALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The National Labor Relations Board, pursuant to the provisions of § 10(e) of the National Labor Relations Act as amended, § 160(e), Title 29 U.S.C.A., has petitioned for the enforcement of its order issued against the Respondent Superior Company, Inc., on May 17, 1951.

The Respondent is an Ohio corporation with its principal place of business at Piqua, Ohio, engaged in the manufacture of men's underwear and related products. It employs from 350 to 400 workers in the plant at Piqua. Textile Workers Union of America, C. I. O., hereinafter referred to as the Union, is a labor organization in which employees of the Respondent are members.

Following some organizational efforts among Respondent's employees, the Union, on June 5, 1950, wrote to General Manager Nicholas of the Respondent requesting that a bargaining meeting be arranged between the Union and the Respondent. Nicholas did not reply to the letter. On June 15, 1950, the Union filed a petition with the Board for determination of the question of representation of Respondent's employees. The Regional Office of the Board attempted to hold an informal conference between representatives of the Board, the Respondent, and the Union, for the purpose of securing an agreement of the parties for a consent election, and sent out notices of such a meeting on July 26th at Piqua. The Respondent replied that it was willing to confer with a representative of the Board, that it would not meet with the Union until that organization was certified by the Board, and that it preferred that the meeting with a representative of the Board be held in some other place than Piqua. Nicholas testified in the later proceedings that he wished to avoid giving the employees the impression that the Respondent in any way

recognized the right of the Union to meet with it. The July 26th conference was rescheduled to be held at Dayton, Ohio.

Upon being advised of this arrangement by the Board, the Union sent a letter, dated July 20, 1950, to Nicholas informing him that five employees of the Respondent, namely, Paul Baker, Miriam Baker, Donna Bryson, Evelyn Bryson and Zelpha McNutt, had been designated to attend the conference as the Union Committee and requested that they be granted the day off for that purpose. Despite the Respondent's statement that it would not meet with the Union, the Board representative proceeded with the arrangements to have the Union represented at the conference, based on the hope that the Respondent might be persuaded at the last minute to consent to participate in the discussions with the Union. On July 25th, Nicholas telegraphed the following reply to the Union:

"Re Your Letter July 20th. Our Meeting on July 26th With Mr. Vincek National Labor Relations Board Only. We Cannot Countenance Absence of Any Employee Under Present Conditions."

Nicholas also advised the individual members of the Union Committee that while there was to be a meeting on July 26th between representatives of the Board and the Respondent, there was not going to be a meeting between the Respondent, the Board and the Union, that he would not countenance their absence from work on the 26th, and instructed them to be present at work on that day, failing which they would be disciplined.

Despite Nicholas' prohibition, the five employees absented themselves from work on July 26th and went to Dayton. The Respondent met with the field examiner of the Board, but refused to meet with the Union representatives. The Union representatives met with the field examiner after he had completed his conference with the Respondent.

On July 27th, each of the five employees on the Union Committee was summoned to the office of the general manager and laid off until August 7, 1950, being told that this discipline was being imposed in punishment

for their action in absenting themselves from work the day before in violation of instructions to the contrary.

During the week preceding the July 26th meeting, Marie Rapp, an employee of the Respondent, with the assistance of one or two other employees, solicited and secured signatures to a petition, drawn by Rapp, which stated in substance that the employees so signing were satisfied with conditions at the plant and didn't need or want any union of any kind. After receiving the petitions, subsequent to the receipt of the Union's letter of July 20th, Nicholas noted that four members of the Union Committee had signed the anti-union petition. On July 25th, he summoned each of the four employees to his office, called their attention to the seeming inconsistency, and asked each of them "which side of the fence" they were on. Thereupon each of the four employees withdrew his or her signature from the anti-union petition.

During August, Nicholas was notified that the Board had scheduled a formal hearing on the Union's representation petition to be held on September 6th. On August 24th, during a recess period, Paul Baker and some other employees were having coffee in the plant cafeteria and Nicholas joined the group. During the conversation Baker asked Nicholas if he had received notice of the formal hearing. Nicholas answered that he had received such a notice and stated to Baker that if he did the same thing he did before, he would be given the same thing he got before. The representation hearing was thereafter postponed, pending a determination of unfair labor practice charges filed by the Union against the Respondent, and involved in this proceeding.

The Board found that the Respondent violated § 8(a), (1) and (3) of the Act in refusing the request of the Union Committee for a day off to attend a conference with the Board's representative and in subsequently imposing a penalty upon the members of the committee for taking the day off contrary to instructions; that the Respondent violated § 8(a)(1) of the Act by interrogating the four members of the Union Committee and requiring them to assume an unequivocal position with respect to the Union; and that the Respondent violated § 8(a)(1) of the Act by threatening to lay off an employee should he attend a scheduled Board's representation hearing, and, on May 17, 1951, entered its cease and desist order based on such findings.

It is conceded by the Board that the Act does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them for any reason except union activity or relationship. If a discharge is not arbitrarily made with a purpose, or as an excuse, to avoid the statute, it is not unlawful. N. L. R. B. v. Jones & Laughlin, 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893; N. L. R. B. v. Tennessee Coach Co., 6 Cir., 191 F.2d 546, 550. The employer's right to hire and fire includes the right to make reasonable rules and regulations and to discipline employees for violation thereof. N. L. R. B. v. Mylan-Sparta Co., 6 Cir., 166 F.2d 485, 491; N. L. R. B. v. Thompson Products, 6 Cir., 162 F. 2d 287, 300. But the discriminatory enforcement of a rule against an employee engaged in union activities will cause a court to inquire carefully into the facts to determine whether the action taken against the employee was in reality because of his violation of the rule or because of his union activities. N. L. R. B. v. Ford, 6 Cir., 170 F.2d 735, 738–739. The Board contends in the present case that the real reason for the disciplinary action taken against the five members of the Union Committee was their union activities rather than their violation of the order prohibiting them from taking the day off to attend the conference at Dayton. If the refusal of the Respondent to grant the requested leave of absence was valid, disciplinary action which followed for a violation of the order was not improper. However, if the refusal to grant the requested leave of absence was invalid under the Act, the disciplinary action which followed was likewise invalid. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 805, 55 S.Ct. 982, 89 L.Ed. 557. This brings us to a consideration of the issue whether the refusal to grant the requested leave of absence was the result of union activities on the part of the members of the Union

Committee or was a justifiable order by the Respondent in the normal operation of its business.

The Board contends that Respondent's action in this respect was an unprecedented departure from the Company's liberal practice in granting requests for leaves of absence, and that the request could have been granted without causing any production problem in the plant. Attention is called to the fact that in a number of incidences, such as Ruth Cox, Roy Francis, James Anderson, Donna Bryson and Miriam Baker, the Respondent had either authorized a leave of absence for personal reasons of the employee, or had overlooked unauthorized absence from work. However, the evidence shows that in each of those cases the absence was a justifiable one because of special reasons, such as in the case of a widow with a dependent child, the wish to attend a funeral, or on the occasion of the birth of a grandchild. In the present case, the facts when analyzed show no justifiable reason. The ostensible reason was to attend a conference with the Respondent. The Respondent had unequivocally stated that it would not participate in such a conference. Under these circumstances, the Respondent knew that it was a useless trip for the five members of the Union Committee to go to Dayton. The resulting facts proved this to be true. In our opinion, the Respondent was fully justified in refusing to grant the request. The situation is not changed by the fact that the Union Committee met with the representative of the Board in Dayton after the Respondent refused to meet with the Committee. It was an informal conference, at which attendance was not required. On the record as it stands, there is nothing to show that such a meeting was either necessary or advisable, or that any information was obtained which the Board representative did not already have, or could not have acquired by either correspondence or by a telephone conversation, or by meeting with the Union Committee in Piqua after working hours. Nor do we think it material that the absence of the five employees did not create a production problem. Several other factors are necessarily involved in any request for leave of absence by a group of employees, particularly when the reason given for the request is non-existent. Management necessarily must have some discretion in regulating absenteeism regardless of the fact that the absence of an employee in a particular instance would not create a production problem.

Respondent relies upon the admission of Nicholas that one of the reasons for refusing the request was because he wanted to avoid giving the impression to the employees that Respondent was dealing with the Union. It is argued that this establishes the anti-union motivation of the denial of the request for leave. But the Union had not at that time attained the status of bargaining agent, and the Respondent had the legal right to refuse to meet with its representatives. It had the legal right to refuse to attend the joint conference requested by the Board. The Respondent had the legal right to refrain from doing any act which might lead its employees to believe that it was recognizing and bargaining with the Union which had not been certified. We do not believe that anti-union motivation, contrary to the provisions of the Act, can be based upon conduct which the Act recognizes as permissible.

The Board contends that the Respondent interfered with the right of the four employees, who were members of the Union Committee, to join a labor organization and participate in its activities by interrogating them with respect to their signatures on the anti-union petition. Interrogation about union membership under some circumstances carries an express or implied threat of reprisal against such employees who have joined a union, and is in violation of § 8(a)(1) of the Act. N. L. R. B. v. Ford, supra; Joy Silk Mills v. N. L. R. B., 87 U.S.App.D.C. 360, 185 F.2d 732, 740. But inquiries unaccompanied by threats of reprisal, express or implied, and without relation to coercion or restraint of the employees in their right of self-organization are not violative of the Act. N. L. R. B. v. Tennessee Coach Co., supra, 6 Cir., 191 F. 2d 546, 555. Section 8(c) of the Act, as amended, permits the employer to express his views about the disadvantages of join-

ing a union, if unaccompanied by threats or coercion. N. L. R. B. v. Mylan-Sparta Co., supra, 6 Cir., 166 F.2d 485, at pages 489, 490. In the present case, the Respondent did not require the four employees to divulge information about their union affiliation which they had not already freely given. By accepting membership on the Union Committee and by applying for leave of absence they had previously notified the Respondent that they were on the Union side. In signing the anti-union petition they created a situation which the Respondent was justified in inquiring into. The interrogation resolved their inconsistent positions. The evidence does not disclose any threat or attempt at coercion. The incident was not part of any general pattern of interrogating employees generally about union affiliation and activities. In our opinion, such limited interrogation, justified by the acts of the employees themselves, was not a violation of the Act.

We agree with the Board's contention that it would be a violation of the Act for the Respondent to refuse to permit an employee to attend a formal hearing of the Board where his presence was requested by the Board. N. L. R. B. v. Fulton Bag & Cotton Mills, 10 Cir., 180 F.2d 68, 70; N. L. R. B. v. Monumental Life Insurance Co., 6 Cir., 162 F.2d 340, 342. But, in our opinion, the incident between Paul Baker and General Manager Nicholas in the plant cafeteria was not of that nature. The trial examiner treated the incident as a trivial one, referring to it in a footnote and not making it the basis of any violation of the Act. Nicholas' statement was made as part of some general "banter" at the time between him and Baker. Baker had not asked permission to attend the hearing. The Board had not requested his presence at the hearing. Nicholas' statement was to the effect that if Baker *did the same thing he did before,* he would again receive disciplinary action. What he did before was to absent himself contrary to orders, for the purpose of making a useless and unnecessary trip. Strictly analyzed, this was not a statement of the Respondent's policy with respect to formal meetings of the Board where his presence would be required. Since no such situation has presented itself, it is entirely conjectural to predict what the Respondent would do under such circumstances. In any event, such casual and isolated remarks of a supervisory employee are not chargeable to the employer in the absence of supporting evidence that they reflect the views of management. Martel Mills Corp. v. N. L. R. B., 4 Cir., 114 F.2d 624, 633–634; N. L. R. B. v. Fairmont Creamery Co., 10 Cir., 144 F.2d 128, 129.

Decree of enforcement is denied.