**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**WINN–DIXIE STORES, INC. and Winn-
Dixie Louisville, Inc., Respondents.**

**No. 15786.**

United States Court of Appeals
Sixth Circuit.

Feb. 27, 1965.

Duane R. Batista, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Lee M. Modjeska, Attorney, N.L.R.B., Washington, D. C., on brief, for petitioner.

Otto Bowden, Jacksonville, Fla., Hamilton & Bowden, Jacksonville, Fla., on brief, for respondent.

Before MILLER, O'SULLIVAN and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

The National Labor Relations Board has petitioned for enforcement of its decision and order reported at 143 N.L.R.B. 848.

Respondent Winn-Dixie Stores, Inc., a Florida corporation, operates through subsidiaries or divisions some 600 retail food supermarkets in the southeastern part of the United States. The present case involves a union organizational campaign at the Winn-Dixie Store at Owensboro, Kentucky, which is one of thirty-three stores operated by respondent Winn-Dixie Louisville, Inc., a wholly-owned subsidiary corporation. Both respondents urge that enforcement of the Board's order be denied, upon various grounds hereinafter discussed. We grant enforcement of the order of the Board.

On August 6, 1962, District Union Local 227, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, began an organizational drive among the twenty-three employees of the Owensboro store. Respondents vigorously resisted unionization. On August 15 the union forwarded to the divisional manager of Winn-Dixie Louisville photostatic copies of sixteen signed authorization cards and requested recogni-

tion and collective-bargaining conferences. Respondents refused to recognize the union. On August 24 Winn-Dixie Louisville filed a petition with the Board for an election, which the Board thereafter dismissed when the complaint was issued in the present proceedings.

The Board found, in agreement with its trial examiner, that respondents violated Section 8(a) (1) of the act, 29 U.S.C. § 158(a) (1), by threats of reprisal against employees because of union activity and by requesting that employees furnish copies of statements given to agents of the Board in connection with the investigation of this case. The Board also found that respondents violated Section 8(a) (5) and (1) of the act, 29 U.S.C. § 158(a) (5) and (1), by refusing to bargain with the union. The order of the Board requires respondents to cease and desist from the unfair labor practices found, and from in any other manner interfering with, restraining or coercing the employees regarding their rights under Section 7 of the act, and requires respondents to bargain with the union upon request and to post the usual notices.

### 1) Liability of Parent Corporation

■ Respondents contend that even if Winn-Dixie Louisville is found guilty of any of the unfair labor practices charged, the order should not be made applicable to the parent corporation. The Board found that the two respondents have common officers, directors and operators; that the common directors and operators formulate and administer a common labor policy for both respondents; that the same directors sit as the ultimate managerial authority for both the parent and subsidiary; and that the basic labor relations policy of the subsidiary emanates from the headquarters of the parent corporation in Jacksonville, Florida. It further appears that the parent corporation provides all the working capital of the subsidiary and guarantees performance of the contracts of the subsidiary. Upon the record in this case we find that the Board did not abuse its

discretion in holding that the parent corporation, respondent Winn-Dixie Stores, Inc., is liable together with its subsidiary for the unfair labor practices found with respect to the Owensboro store. N. L. R. B. v. Gibraltar Industries, Inc., 307 F.2d 428, 431 (C.A. 4), cert. denied, 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719; N. L. R. B. v. National Shoes, Inc., 208 F.2d 688, 691 (C.A. 2); Darlington Mfg. Co. v. N. L. R. B., 325 F.2d 682, 687–691 (C.A. 4) (dissenting opinion), cert. granted, 377 U.S. 903, 84 S.Ct. 1170, 12 L.Ed.2d 175 (1964) (No. 874, 1963 Term; renumbered No. 41, 1964 Term); cf. N. L. R. B. v. Deena Artware, Inc., 361 U.S. 398, 402–404, 80 S.Ct. 441, 4 L.Ed. 2d 400; N. L. R. B. v. Elias Brothers Big Boy, Inc., 325 F.2d 360 (C.A.6); N. L. R. B. v. Royal Oak Tool & Machine Co., 320 F.2d 77, 80, 81 (C.A.6).

It is to be emphasized that the order of the Board is expressly limited in its application to the Owensboro store, and does not apply to other supermarkets operated by respondents.

### 2) Interference, Restraint and Coercion

■ We find substantial evidence on the record supporting the Board's conclusion that respondents violated Section 8(a) (1) by interrogation and threats of reprisal, including a threat to close the Owensboro store in event a majority of the employees authorized the union to become their bargaining representative. Reference is made to the decision of the Board for details of these violations. 143 N.L.R.B. 848.

### 3) Requesting Copies of Statements

■ The only aspect of the Section 8 (a) (1) violations requiring discussion here is the Board's finding that respondents violated the act by requesting from employees copies of statements given to agents of the Board. We approve the following language of the Board's decision on this point:

"Pre-trial statements taken by the General Counsel are intended to record and preserve the facts leading to the alleged unfair labor practices

on which the charge is based. As such, these statements necessarily reveal the employees' attitudes, activities, and sympathies in connection with the Union. Moreover, the statements divulge the union sympathies and activities of other employees and the conduct of the supervisors toward the Union and its adherents. As such, they should be as free of any inquisitive interest by the Employer as are the employees' union activities themselves. Knowledge by the employee that his Employer is manifesting an interest in what the employee may say about him can only exert an inhibitory effect on the employee's willingness to give a statement at all or to disclose all of the matters of which he has knowledge for fear of saying something that might incur the Employer's displeasure and possible reprisal. Accordingly, we are of the opinion that the Respondents' requests for copies of employees' statements to the General Counsel constitute interference, restraint, and coercion within the meaning of Section 8(a) (1) of the Act." 143 N.L.R.B. at 849–50.

See also, Siegel Co. v. N. L. R. B., 328 F.2d 25, 27 (C.A. 2).

■ It is to be emphasized that the Board recognized, as do we, that the respondents had the right to "interview employees for the purpose of discovering facts within the limits of the issues raised by a complaint, where the employer, or its counsel, does so for the purpose of preparing its case for trial and does not go beyond the necessities of such preparation to pry into matters of union membership, to discuss the nature or extent of union activity, to dissuade employees from joining or remaining members of a union, or otherwise to interfere with the statutory right to self-organization." Joy Silk Mills v. N. L. R. B., 87 U.S.App.D.C. 360, 185 F.2d 732, 743, cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350.

In Joy Silk Mills the court also said:

"Apparently this rule means that an employer may question his employees in preparation for a hearing but is restricted to questions relevant to the charges of unfair labor practice and of sufficient probative value to justify the risk of intimidation which interrogation as to union matters necessarily entails; and that even such questions may not be asked where there is purposeful intimidation of employees. Such a standard assumes that interrogation of employees concerning their union activities is, of itself, coercive, but that fairness to the employer requires that a limited amount of such questioning be permitted despite the possible restraint which may result." 185 F.2d at 743.

■ Moreover, the Board has held that while the employer may not, prior to the hearing, ask for a copy of a statement given by the employee to the Board, he may ask whether the employee has given the Board a statement. Montgomery Ward & Co., 146 N.L.R.B. No. 1. Further, the employer is entitled to access to the statement when the employee testifies at the hearing, Raser Tanning Co. v. N. L. R. B., 276 F.2d 80, 82–83 (C.A. 6), cert. denied, 363 U.S. 830, 80 S.Ct. 1601, 4 L.Ed.2d 1524, or may request copies without coercion under procedures established by the Board. W. T. Grant Company v. N. L. R. B., 337 F.2d 447 (C.A. 7).

This court has reached the same decision on this question in its opinion announced today in Surprenant Manufacturing Co. v. N. L. R. B., 6 Cir., 341 F.2d 756.

#### 4) Failure of Respondents to Bargain with Union

The most serious question presented is that part of the Board's order requiring that respondents proceed upon request to bargain with the union, as the exclusive representative of the employees at respondents' Owensboro store, even though no election has been conducted.

The Board found that at the time the union requested recognition by respondents as bargaining representative, it had valid designation cards signed by a majority of the employees, and that respondents refused recognition, not because of a good faith doubt as to the union's majority status, but in order to gain time in which to undermine that status.

The union furnished to respondents photostatic copies of sixteen signed authorization cards. The Board rejected two of the cards as having been signed by supervisors, and a third because the employee was told that the only purpose of signing the card was to obtain an election, and not to authorize union representation. After rejecting these three cards, the Board found that the union had been designated as bargaining representative by a majority of thirteen of the twenty-three employees at the Owensboro store.

The authorization cards were regulation 3½″ by 5½″ business reply mail postal cards. The signature side was captioned, in letters larger and blacker than anything else on the card, as follows: "AUTHORIZATION FOR REPRESENTATION UNDER THE NATIONAL LABOR RELATIONS ACT." Under this heading there was space for a date to be filled in by the employee, and spaces for the name of the employer and the job title of the signer. Over the signature and home address of the signer was a statement that the undersigned employee does "hereby authorize District Union Local 227, AFL–CIO, to represent me and in my behalf petition the National Labor Relations Board for an election to determine bargaining rights."

█ The express language of this card could be construed to authorize the union to represent the signing employee in bargaining with the employer, and also on his behalf to petition for an election. Although it could be argued that the wording and punctuation employed could lead to an impression that its intent was to authorize the union to act for the employee only in petitioning for an election, the Board and its examiner found otherwise. We cannot say that such finding is without support. This case therefore is not controlled by those decisions where the primary or sole emphasis in the language of the card is authorization for petitioning for an election.[1]

█ The decisions of the Board as well as the opinions of the courts place more emphasis upon the representations made to the employees at the time the cards were signed than upon the language set forth in the cards. If in fact misrepresentations are made by the union to employees to the effect that the only purpose of the card is to authorize the union to petition the Board for an election, the card will not be construed to authorize representation, even though it contains language to that effect. N. L. R. B. v. Koehler, 328 F.2d 770 (C.A. 7); Englewood Lumber Company, 130 N.L.R.B. 394.[2]

We turn now to the question of whether there is substantial evidence on the record considered as a whole to support the following finding of the Board:

"In the instant case the cards, on their face, specifically authorized the Union to represent the employees. And, except for one card, not in issue herein, the record shows that the representations made by the Union's solicitors in order to obtain employee signatures, clearly reflect and corroborate the purpose

---

1. See, e. g., Morris & Associates, Inc., 138 N.L.R.B. 1160, where the card was headed "I want an N. L. R. B. Election" and in the first paragraph authorized the union to petition for an election "as soon as possible" and in a later paragraph authorized the union to act as the signer's agent with the company "in regard to wages, hours and working conditions."

2. This rule was recognized by the Board in the present case in rejecting the card signed by employee Elder, upon the ground that the union organizer "testified that he told Elder that the purpose of the card was merely to show enough interest to have an election."

of the cards as printed thereon. The Trial Examiner's finding that no misrepresentations were made in securing employee signatures is amply supported by the record. Hence, without considering their subjective intent in signing the cards, we find, in agreement with the Trial Examiner, that the employees authorized the Union to represent them." 143 N.L.R.B. at 851.

■■ As said in N. L. R. B. v. Philamon Laboratories, Inc., 298 F.2d 176, 179 (C.A. 2), cert. denied, 370 U.S. 919, 82 S.Ct. 1555, 8 L.Ed.2d 498:

"The act imposes a duty to bargain in good faith upon request whenever a labor organization has been designated by a majority of employees in an appropriate bargaining unit. The employer must recognize and bargain with such an organization whether or not it has been certified by the Labor Board. United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U. S. 62, 76 S.Ct. 559, 100 L.Ed. 941 (1956); N. L. R. B. v. Sunrise Lumber & Trim Corp., 241 F.2d 620 (2 Cir., 1957), cert. denied 355 U.S. 818, 78 S.Ct. 22, 2 L.Ed.2d 34 (1957). To be sure, an employer laboring under a good faith doubt as to a union's majority status need not extend recognition. Nevertheless, in the absence of such a doubt, the employer has no vested right to an election. N. L. R. B. v. Trimfit of California, 211 F.2d 206 (9 Cir., 1954)."

Of the fourteen employees [3] whose cards were presented by the union to respondents, twelve appeared at the hearing to identify their signatures and explain the circumstances under which they signed. The union solicitors who obtained the signatures of the other two employees testified as to the details of how these cards were signed.

■ As said in Joy Silk Mills v. N. L. R. B., supra:

"[A]n employee's thoughts (or afterthoughts) as to why he signed a union card, and what he thought that card meant, cannot negative the overt action of having signed a card designating a union as bargaining agent. N. L. R. B. v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 790; N. L. R. B. v. Consolidated Machine Tool Corp., 67 N.L.R.B. 737, 739, enforced 163 F.2d 376, certioriari denied 332 U.S. 824, 68 S. Ct. 164, 92 L.Ed. 399." 185 F.2d at 743.

To like effect see N. L. R. B. v. Greenfield Components Corp., 317 F.2d 85, 87 (C.A. 1); N. L. R. B. v. Gorbea, Perez & Morell, 300 F.2d 886 (C.A. 1).

■ While some of the testimony is conflicting and ambiguous, we find substantial evidence on the record considered as a whole to support the holding of the Board to the effect that thirteen employees, constituting a majority, signed valid authorization cards, that no misrepresentations were made by union representatives sufficient to invalidate the cards, that respondents did not have grounds for a good faith doubt as to the union's majority status, and that respondents violated Section 8(a) (5) and (1) of the act in refusing to bargain with the union. N. L. R. B. v. Gorbea, Perez & Morell, supra; N. L. R. B. v. Stow Mfg. Co., 217 F.2d 900 (C.A. 2), cert. denied, 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 751.

5) Appropriate Unit

Respondents contend that the Owensboro store does not constitute an appropriate unit for collective bargaining within the meaning of the act. In holding this store to be an appropriate unit, the Board considered the factors of geographic separation from other stores in the Winn-Dixie chain, the practice of respondents of hiring local employees, minimal exchange with other stores, absence

3. We disregard the two supervisors whose cards were rejected by the Board.

of a bargaining history on a broader basis, and the fact that there was not any union seeking to represent these employees on a broader basis.

As said by this court in Metropolitan Life Insurance Company v. N. L. R. B., 330 F.2d 62, 65 (C.A. 6), petition for cert. filed, 33 U.S.L.Week 3059 (U.S. June 30, 1964) (No. 229):

"The Board has the authority under the Act to determine the appropriate unit for collective bargaining. (Section 159(b), Title 29, U.S.C.) It has wide discretionary powers in this respect. What is an appropriate unit is a question of fact to be determined by the Board upon the facts of each case. Its decision will not be disturbed except for an abuse of discretion or violation of the statute."

We hold that the Board acted within its power in fixing the Owensboro store as an appropriate unit.

Enforcement of the order of the Board is granted.