SURPRENANT MANUFACTURING
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 15592.

United States Court of Appeals
Sixth Circuit.

Feb. 27, 1965.

Matthew E. Murray, Chicago, Ill. (Richard L. Marcus, John D. O'Brien, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on the brief), for petitioner.

Robert A. Armstrong, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lee M. Modjeska, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before MILLER and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioner, Surprenant Manufacturing Company, hereinafter referred to as Surprenant, seeks a review of an order of the National Labor Relations Board issued on September 11, 1963. In its answer to the petition, the Board has requested enforcement of the order.

Surprenant is engaged in the manufacture and sale of insulated wire and cable, with its principal place of business in Clinton, Massachusetts. It trans-

acts business in Michigan and Ohio, within this judicial circuit. Petitioner sought the present review in this circuit rather than in Massachusetts, which it was authorized to do under Section 10 (f) of the National Labor Relations Act, Section 160(f), Title 29 United States Code. The Board found that Surprenant violated Section 8(a) (1) of the Act, Section 158(a) (1), Title 29 United States Code, (1) by posting a notice on its bulletin boards which stated that the advent of a union would work to the employees' serious harm; (2) by threatening to deprive employees of overtime work opportunities, to close or move the plant, and to discontinue existing benefits if a union succeeded in securing representation rights, and (3) by interrogating employees as to the contents of statements given by them to agents of the Board investigating unfair labor practice charges. The Board's order required petitioner to cease and desist from the unfair labor practices found and from in any like manner interfering with or coercing employees in the exercise of their rights under the Act, and to post the customary notice. We will consider each of these findings in turn.

## POSTING NOTICE ON THE BULLETIN BOARDS

On October 5, 1962, the United Steelworkers of America, AFL–CIO, filed a representation petition seeking an election among production and maintenance employees at Surprenant's plant in Clinton, Massachusetts. An election was set for November 9, 1962. On or about October 15, 1962, Surprenant caused the following notice to be posted on all bulletin boards in its Clinton, Massachusetts, plant.

"Notice to All Employees

"As you know, unions are again campaigning to organize some of our employees. Some of you are again asking questions regarding this campaign. Because of your questions, we are stating the Company's position on this matter as clearly as possible.

"(1) This matter, is, of course, one of concern to the Company. It is also a matter of serious concern to you. Our sincere belief is that if a union were to represent you in our plant, it would not work to your benefit but to your serious harm.

"(2) We sincerely believe that the introduction of a union into our plant is not necessary or beneficial to your welfare and growth with this Company. We, therefore, propose to use every proper means to prevent a union from becoming established here.

"(3) We would like to make it clear that it is not necessary for anyone to belong to any union in order to work in this plant.

"(4) Those who might join or belong to a union will not receive any advantages or any preferred treatment of any sort over those who do not join or belong to a union.

"(5) If anyone causes you any trouble at your work or puts you under any kind of pressure to join a union, you should let the Company know, and we will undertake to see that this is stopped.

"(6) No person will be allowed to carry on union organizing activities on the job. Anyone who does so and who thereby neglects his own work or interferes with the work of others will be subject to discharge.

"You should be aware that the above statements are factual and that any information you may receive, which is in conflict to this, is not true. Please feel free to continue to discuss any questions or problems that you may have concerning these matters with either Mr. Paul Gordon or any supervisory employee."

The Board contends that this notice was a veiled threat, tending to coerce the employees in their selection of a union in the subsequent election. The Board centers its contention on the two

statements that the advent of a union "would not work to your benefit but to your serious harm" and that Surprenant proposed "to use every proper means to prevent a union from becoming established here." Surprenant contends that the notice was in exercise of its constitutional right of free speech under the First Amendment to the Constitution of the United States. N. L. R. B. v. Brown-Brockmeyer Co., 143 F.2d 537, 543, C.A. 6th. In that case we stated "An employer has the right of freedom of speech and may express his hostility to a union and his views on labor problems or policy, providing he does not threaten or coerce his employees."

This statement of the law has since been recognized in the enactment of Section 8(c) of the National Labor Relations Act in 1947, Section 158(c), Title 29 United States Code. Section 8(c) of the Act provides:

> "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

It has been held under this section of the Act that the prediction of unfavorable consequences resulting from unionization is not a violation of the Act, provided that it is a prediction of such consequences, rather than a threat on the part of the employer to visit such consequences upon the employees in the event of unionization. Union Carbide Corp. v. N.L.R.B., 310 F.2d 844, C.A. 6th; N.L.R.B. v. Transport Clearings, Inc., 311 F.2d 519, 523–524, C.A. 5th.

The facts in this case are very similar to those in N.L.R.B. v. Threads, Inc., 308 F.2d 1, 4, 8–9, C.A. 4th. In that case the Court reversed the finding of the Examiner that the employer engaged in an unfair labor practice by stating its opposition to the union, its "positive intention to oppose the Union and by every proper means to prevent it from coming into the plant," and that it was its "sincere belief that if this Union were to ever get into this plant it would not work to your benefit but to your serious harm." It was held that such statements were privileged under Section 8(c) of the Act.

See also: Texas Industries, Inc. v. N.L.R.B., 336 F.2d 128, 130–131, C.A. 5th; Henry I. Siegel Co. v. N.L.R.B., 328 F.2d 25, 26, C.A. 2nd.

 The evidence shows that Surprenant's Director of Employee Relations spoke to different groups of its employees on a number of occasions prior to the election. In these speeches he pointed out the probability of the loss by the employees of regular and overtime work if the union won the election. It was pointed out that under existing arrangements, an employee would not be sent home before the workday was over when work was no longer available in his own regular department, but would be temporarily transferred to another department where work was available. This enabled the employee to receive pay for a full day's work, instead of for only a part of the day. Such a transfer would not be possible under union policy and the provisions of its collective bargaining contract with the company. The Trial Examiner found this to be "no more than forceful argumentation" and not to constitute a threat to discontinue the existing regular work opportunities. It was also pointed out in these speeches that existing overtime work would be lost in the advent of the union in that the company would avoid paying the 50% premium on top of the union wage scale, which would be required by the union contract. We believe that these are the logical and reasonable explanations of what was meant by the statement in the notice that the advent of the union "would not work to your benefit but to your serious harm." Section 8(c) of the Act not only gives the employer the right to express his opinion in opposition to the union, but also the right to express "argument" in support of such opinion. The right would be of

very little value if the employer in expressing opposition to a union was forbidden to point out in what ways the advent of the union would not work to the benefit of the employees, but to their serious harm.

We are of the opinion that the posting of the notice to all employees on the bulletin boards was protected by Section 8(c) of the Act and did not constitute an unfair labor practice under Section 8(a)(1) thereof. N.L.R.B. v. Threads, Inc., supra 308 F.2d 1, 4, 8–9, C.A. 4th; Texas Industries, Inc. v. N.L.R.B., supra, 336 F.2d 128, 130–131, C.A. 5th; Union Carbide Corp. v. N.L.R.B., supra, 310 F. 2d 844, 845, C.A. 6th.

### THREATS CONTAINED IN SPEECHES OF SURPRENANT'S DIRECTOR OF EMPLOYEE RELATIONS

Paul Gordon, Surprenant's Director of Employee Relations, delivered a series of 21 addresses to employee groups ranging in size from 37 to 73. These speeches were given in the plant conference room. Employees were directed by their respective supervisors to attend. Gordon gave essentially the same speech to the different groups 21 times. He used an outline of topics, which were basically designed to induce employees to refrain from supporting the union in the pending campaign. His talk does not appear to have been memorized. Gordon's discussion of the following three subjects is relied upon by the Board as constituting a violation of Section 8(a)(1) of the Act.

■■ In his talks Gordon discussed the question of overtime and the possible loss of overtime opportunities if the union got in. He pointed out that unions do not create overtime, that overtime was completely dependent on the volume of business, and that the employees would not keep the overtime they had under existing arrangements because men would be sent home after 40 hours of work in order to avoid the 50% premium on top of the union wage scale, which Gordon referred to in his speeches as

being higher than Surprenant's, but lacking Surprenant's security. The Trial Examiner found under these facts that Gordon threatened the loss of overtime if the union came in and thereby transcended legitimate persuasive efforts and engaged in interference as defined in Section 8(a)(1) of the Act. The Board concurred in this finding. It is often difficult to determine whether certain statements by management constitute permissible forceful argument in support of management's opposition to the advent of a union. Bonwit Teller, Inc. v. N.L.R.B., 197 F.2d 640, 645, C.A. 2nd, cert. denied, 345 U.S. 905, 73 S.Ct. 644, 97 L. Ed. 1342; Pittsburgh S. S. Co. v. N.L.R.B., 180 F.2d 731, 738, C.A. 6th, affirmed, 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479, or constitute an illegal threat to the employees in the event the union should win the election. N.L.R.B. v. Geigy Co., Inc., 211 F.2d 553, 557, C.A. 9th cert. denied, 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647; N.L.R.B. v. McCatron, 216 F.2d 212, 216, C.A. 9th, cert. denied, 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738; N.L.R.B. v. Marsh Supermarkets, Inc., 327 F.2d 109, 111, C.A. 7th, cert. denied, 377 U.S. 944, 84 S.Ct. 1351, 12 L.Ed.2d 307. In such cases, if the inference or conclusion found by the Board that the statements constituted a threat is a reasonable one, which it was permissible for the Board to make, its conclusion will not be set aside on review, even though a different inference or conclusion may seem more plausible and reasonable to us. N.L.R.B. v. Superex Drugs, Inc., 341 F.2d 748, C.A. 6th, January 21, 1965. N.L.R.B. v. Marsh Supermarkets, Inc., supra, 327 F.2d 109, 111, C.A. 7th, cert. denied, 377 U.S. 944, 84 S.Ct. 1351; Hendrix Manufacturing Co. v. N.L.R.B., 321 F.2d 100, 105, C.A. 5th; N.L.R.B. v. Ford, 170 F.2d 735, 738–739, C.A. 6th. The finding of the Trial Examiner, which was approved by the Board, was a permissible one under the circumstances under which the remarks were made, and the Board's ruling is affirmed. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.

In his speeches Gordon detailed the benefits which had been given employees without the necessity of union representation, with specific reference to the pension plan, the sickness and accident program, the three-weeks vacation plan, pay for jury duty and military leave, and the numerous recreational programs instituted by the company. He stated that if a union got in, all of the programs he mentioned would be subject to negotiation and that union representation did not necessarily mean an improvement in benefits, but whatever happened after representation was secured would be the result of negotiation. Several employees testified that Gordon stated in his speeches that if the union should win and represent the employees, the benefits voluntarily given the employees would cease, that the employees would have to start from "scratch," that the benefits which had been given employees had been given by the company and nobody else could give them, that they would be negotiated and that "the bargaining could be hard," that management were hard people to bargain with, and that strikes did not bother them.

■ The Trial Examiner found that the evidence was clearly preponderate in favor of the conclusion that at least at some of the meetings Gordon plainly conveyed the message that a consequence of the selection of the union would be the discontinuance of existing benefits and a "start from scratch," the coercive effect of which was plain. The Board adopted this finding, which we also approve. In our opinion, this constituted a violation of Section 8(a)(1) of the Act. N.L.R.B. v. Marsh Supermarkets, Inc., supra, 327 F.2d 109, 111, C.A. 7th, cert. denied, 377 U.S. 944, 84 S.Ct. 1351; Hendrix Manufacturing Co. v. N.L.R.B., supra, 321 F.2d 100, 105, C.A. 5th.

In his speeches Gordon referred to the possibility of the plant moving or closing. He reviewed the financial picture of the Surprenant operation and referred to some of the factors that tended to make the investment of somewhat questionable value, pointing to delays in the delivery schedule and to a relatively high scrap rate in the plant. He pointed out that if the delivery schedule did not improve, their employment would be imperiled because the company's competitive position would be jeopardized. He called attention to the fact that whereas Surprenant had previously enjoyed 90 per cent of the teflon market, at the present time there were several competitors bidding against Surprenant for the available business. He referred to other plants in the Clinton area that had been unionized and subsequently moved out of town because they could not profitably operate due to excessive union demands.

■■ We are of the opinion that if Gordon's remarks on this phase of the question had been limited to a prediction of the economic problems if the union came in, they would not have constituted coercive statements. Union Carbide Corp. v. N.L.R.B., supra, 310 F.2d 844, 845, C.A. 6th; N.L.R.B. v. Transport Clearings, Inc., supra, 311 F.2d 519, 523, C.A. 5th. But there was also substantial testimony that Gordon referred to the probability that if the company did not choose to meet excessive union demands and a strike resulted, the company might decide to move the operation elsewhere or to shut it down. Such a statement goes further than predicting the economic result which would necessarily follow from the advent of the union, over which the employer had no control, in that it involved possible action on the part of the company to close down the plant rather than meet the union's demands. N.L.R.B. v. Teamsters, etc., 314 F.2d 792, 794, C.A. 1st. See: Texas Industries, Inc. v. N.L.R.B., supra, 336 F.2d 128, 130, C.A. 5th.

We also agree with the ruling of the Trial Examiner and the Board that the "Notice to All Employees," which was posted over the time clocks on November 8 and which denied the charge by the union that the company had threatened to close the plant in the event the union won the election, did not completely erase the effect of the coercive statements previously made. N.L.R.B. v. Arm-

strong Tire & Rubber Co., 228 F.2d 159, 161, C.A. 5th; N.L.R.B. v. Fulton Bag & Cotton Mills, 175 F.2d 675, 676–677, C.A. 5th. It will be noticed in passing that although the notice denied that any such statement *had been made,* it contained no statement or assurance that the plant would not be closed in the event the union won the election.

We agree with the finding of the Examiner and the Board that this constituted a violation of Section 8(a)(1) of the Act. United Fireworks Mfg. Co. v. N.L.R.B., 252 F.2d 428, 430, C.A. 6th; N.L.R.B. v. Hoppes Mfg. Co., 170 F.2d 962, 963, C.A. 6th; N.L.R.B. v. Morris Fishman & Sons, Inc., 278 F.2d 792, 796, C.A. 3rd; N.L.R.B. v. West Coast Casket Co., 205 F.2d 902, 904–905, C.A. 9th.

## INTERROGATION OF EMPLOYEES AS TO STATEMENTS GIVEN TO AGENTS OF THE BOARD

On or about February 15, 1963, four days before a scheduled hearing on the unfair labor practice complaint issued against the company on December 20, 1962, Surprenant's attorney, Judge Richard Comerford, met separately with three of the company's employees. Without going into the details of each of these interviews, it appears that each one followed the same general pattern. The employee was called to an office in the plant and introduced to Judge Comerford, who stated to the employee that he had been retained as counsel for the company, that if the employee did not wish to speak to him he did not have to, and that the employee could decline to answer any questions asked. The employees expressed no objections to the interview. In the interview Judge Comerford asked the employee if he had given a statement to an agent of the Board, which question was answered in the affirmative. In each of these instances Judge Comerford asked the employee if he would be willing to tell what he had said therein, which two of the employees indicated they were willing to do. No definite response was made by the third employee. Subsequent questioning of the employees failed to develop anything

material about the substance of the statements. Both the Trial Examiner and the Board found this to be an unfair labor practice within the scope of Section 8(a)(1) of the Act.

Surprenant contends that this ruling is erroneous in that the attorney first advised the employees that they did not have to answer, that the attorney merely requested information about what was contained in the statements, but did not demand that the information be furnished, and that a ruling that such questioning was a violation of the Act is in conflict with the undeniable trend to broaden the opportunities for complete discovery in the pretrial stages of all federal proceedings. Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451. It is contended that such a ruling imposes stifling restrictions on attorneys seeking to prepare for hearings before the National Labor Relations Board, and that while the questioning of an employee might, under some circumstances, be illegal, it might not be coercive under different circumstances, and that the adoption of a "per se" rule of illegality was not the answer to the problem. Atlantic & Pacific Tea Co., 138 N.L.R.B. 325. See: N.L.R.B. v. Tennessee Coach Co., 191 F.2d 546, 555, C.A. 6th; N.L. R.B. v. Superior Co., Inc., 199 F.2d 39, 43, C.A. 6th; N.L.R.B. v. Power Equipment Co., 313 F.2d 438, 440, C.A. 6th.

There is merit in the contention that an employer should be privileged to interview employees for the purpose of discovering facts within the limits of the issues raised by a complaint, where the employer or its counsel does so for the purpose of preparing its case for trial and the questioning is restricted to that extent. We think that this privilege is well recognized. Joy Silk Mills v. N.L.R.B., 87 U.S.App.D.C. 360, 185 F.2d 732, 743, cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350; N.L.R.B. v. Katz Drug Co., 207 F.2d 168, C.A. 8th; Texas Industries, Inc. v. N.L.R.B., supra, 336 F.2d 128, 133, C.A. 5th. But, as pointed out in those cases, the privilege is a narrow one. The interrogation is

limited to the purpose of preparing the case for trial. It does not include the right to pry into matters of union membership, to discuss the nature or extent of union activity or to dissuade employees from joining or remaining members of a union. The cases recognize that the rule calls for a delicate balance between the legitimate interest of the employer in preparing its case for trial, and the interest of the employee in being free from unwarranted interrogation.

■ In the present case, the company had been served with a copy of the complaint and knew the issues it had to meet. In our opinion, the questions seeking to elicit all information given by the employee to an agent of the Board were indiscriminate inquiry which exceeded the necessities of the situation, and constituted a violation of Section 8 (a)(1) of the Act. Joy Silk Mills v. N.L. R.B., supra, 87 U.S.App.D.C. 360, 185 F. 2d 732, 743–744, cert. denied, 341 U.S. 914, 71 S.Ct. 734; Texas Industries, Inc. v. N.L.R.B., supra, 336 F.2d 128, 133–134, C.A. 5th; Henry I. Siegel Co. v. N.L.R.B., supra, 328 F.2d 25, 27, C.A. 2nd. See: Hilton Credit Corp., 137 N.L. R.B. 56, note 1.

As was stated by the Court in the Texas Industries, Inc., case, supra, 336 F.2d at page 134:

"The employee will be understandably reluctant to reveal information prejudicial to his employer when the employer can easily find out that he has done so. No employee will want to risk forfeiting the goodwill of his superiors, thereby lessening his job security and promotion opportunities. It is no answer to say that the employee is free to refuse to furnish his employer with a copy of his statement. A refusal under such circumstances would be tantamount to an admission that the statement contained matter which the employee wished to conceal from the employer. In order to assure vindication of employee rights under the Act, it is essential that the Board be able to conduct effective investigations and secure supporting statements from employees. We feel that preserving the confidentiality of employee statements is conducive to this end."

And, as stated in the Joy Silk Mills case, supra, 185 F.2d at pages 743–744:

" * * * it has been consistently held that the question is not whether an employee actually felt intimidated but whether the employer engaged in conduct which may reasonably be said to tend to interfere with the free exercise of employee rights under the Act."

See also: N.L.R.B. v. Ford, supra, 170 F.2d 735, 738, C.A. 6th.

This Court has reached the same decision on this question in its opinion announced today in National Labor Relations Board v. Winn-Dixie Stores, Inc., and Winn-Dixie Louisville, Inc., 341 F.2d 750.

Paragraph 1 of the Board's order directed that Surprenant cease and desist from:

"(a) Warning or threatening employees it would deprive them of overtime. work opportunities, close or move the plant, or discontinue existing benefits if the Union succeeds in securing representation rights.

"(b) By bulletin board notice or otherwise stating to employees that the coming of a union would work to their serious harm."

The order is amended by striking paragraph 1(b). The notice to be posted at the company's Clinton plant will be amended to conform to the above ruling. Decree of enforcement of the order as so amended will be entered.