The **MORSE INSTRUMENT COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD,** Respondent.

No. 17372.

United States Court of Appeals
Sixth Circuit.

Dec. 28, 1967.

George W. Rooney, Akron, Ohio, William K. Rice, Wise, Roetzel, Maxon, Kelly & Andress, Akron, Ohio, on brief, for petitioner.

Morton Namrow, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Paul J. Spielberg, Attorney, N.L.R.B. Washington, D. C., on brief, for respondent.

Before PHILLIPS, McCREE and COMBS, Circuit Judges.

COMBS, Circuit Judge.

This case is before us upon the petition of The Morse Instrument Company to set aside an order of the National Labor Relations Board which held that the company had violated Section 8(a)(1) of the National Labor Relations Act in connection with a Board supervised representation election. The Board has requested by cross-petition that its order be enforced. The Board's decision and order are reported at 159 N.L.R.B. No. 117.

■ The Board found that supervisory personnel of the company coercively interrogated employees and threatened economic reprisals if the Union won the impending election. The order requires that the Company cease and desist from engaging in the unfair labor practices found; that the usual notice be posted and that another election be held.[1]

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, hereinafter called "union", engaged in an organizational campaign at employer's plant during August, 1965. A representation election was conducted on September 2, 1965, pursuant to a petition for consent election. The violations found by the Board relate to conversations between six employees and their supervisors during the month of August.

Employee Hutchinson was asked by Hunka, his foreman, what he thought of the union and what decision he had reached in the matter. Hutchinson replied he was undecided. He was requested to think about it over the weekend and to talk to Hunka again. A few days later a second conversation occurred in Hunka's office where Hutchinson had gone to discuss a plant operations problem with the foreman. Hunka inquired as to the employee's decision regarding the union and Hutchinson answered that he planned to vote against it. The maintenance and factory employment manager, Stone, took the opportunity presented by Hutchinson's application for sick leave to discuss sick leave benefits in general, explain benefits offered by the company, and state his opposition to the union. He asked if Hutchinson liked the sick leave plan and the latter replied he did.

Foreman Hunka approached an employee, Mt. Joy, at his working place and inquired what he thought of the election situation and whether he had made up his mind about the election. Mt. Joy said he had not made up his mind. Hunka then discussed benefits offered by the company without the union, stated his opposition to the union, and said that if the union came in the working hours more than likely would be reduced from nine to eight. The work schedule in use at the time allowed the ninth hour as overtime.

Employee Roach was asked by employment manager Stone whether the union would be approved and why he wanted the union. Roach replied that he

---

1. The Board's action in directing a second election is not a final order and is not before this Court for review. See A. F. of L. v. Labor Board, 308 U.S. 401, 408–412, 60 S.Ct. 300, 84 L.Ed. 347 (1940); Timken-Detroit Axle Co. v. N.L.R.B., 197 F.2d 512 (6th Cir. 1952).

thought the union would get in, and that he had weighed both sides and thought it best to have the union. Stone wanted to know what he thought he would get out of the union and what the labor organization had promised. Roach said the union had promised nothing. Stone then stated that a strike at Highway Products (apparently a company familiar to Morse personnel) had not accomplished anything, and that "if we got the Union in that we would more than likely go on a strike because they couldn't give in to the Union's demands."

Stone also conversed with another employee, Augustyn, stating he had heard that the employees were going to vote union, and discussed the advantages provided by the company and the disadvantages which would accompany the union. Stone pointed out, "We have a nice friendly atmosphere in the shop now. We wouldn't want it spoiled if the Union got in and ruined relationships between the employees and the employer. * * Highway Products was on strike a lot of times of the year. That was one of the disadvantages of the Union."

Employee Bobich was asked by foreman Zorich if he was one of the union organizers and why he felt the plant needed the union. Bobich replied he believed the union would obtain more money and better working conditions and privileges for the employees.

Employee Williams, previously temporarily assigned to the foundry department, was working in the drill press department when the foundry foreman, Massic, asked him, "Are you ready to come back to the foundry?" Williams said, "No," then added, "I wouldn't mind going back to work over there if I was going to stay over there. But I don't like being shifted around. Because about the time I learn my job in one place I would be transferred to the other job." Massic said, "Well, vote no and I won't bother you any more." He smiled and walked off.

The trial examiner found these conversations to be unfair labor practices on the part of the company and the Board affirmed.

Our review of the evidence is limited to a determination of whether the findings of the Board are supported by substantial evidence. The statute provides that "the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e).

In Surprenant Manufacturing Company v. N.L.R.B., 341 F.2d 756, 760 (1965), this Court said:

"In such cases, if the inference or conclusion found by the Board that the statement constituted a threat is a reasonable one, which it was permissible for the Board to make, its conclusion will not be set aside on review, even though a different inference or conclusion may seem more plausible and reasonable to us. [Citing cases.]"

The Board could reasonably conclude that foreman Hunka's statement to employee Mt. Joy that if the union came in the working time more than likely would be reduced from nine to eight hours, thereby eliminating overtime, constituted a threat of reprisal. The Board could also reasonably place the same conclusion on foreman Massic's statement to employee Williams in regard to his transfer to the foundry; also on Stone's statement to employee Roach that "we would more than likely go on a strike." These incidents when considered in connection with the other conversations between the foremen and other employees, all of which occurred only a few days before the election, establish a pattern of conduct which the Board could reasonably find amounted to coercion and threats of reprisal.

We are of the opinion that the order of the Board should be and it is ordered to be enforced.

PHILLIPS, Circuit Judge (dissenting).

I respectfully dissent.

My opinion is that there is no substantial evidence on the record considered as

a whole to support the Board's decision that the employer interfered with, restrained and coerced its employees in the exercise of their organizational rights in violation of § 8(a) (1) of the Act. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

This case does not reflect the usual pattern of anti-union animus, accompanied by pressure and threats by management to influence the votes of employees. In Bourne v. N.L.R.B., 332 F.2d 47, 48 (2d Cir.), the following five standards are announced to determine whether interrogation, not itself threatening, is an unfair labor practice:

"(1) The background, i. e. is there a history of employer hostility and discrimination?

"(2) The nature of the information sought, e. g. did the interrogator appear to be seeking information on which to base taking action against individual employees?

"(3) The identity of the questioner, i. e. how high was he in the company hierarchy?

"(4) Place and method of interrogation, e. g. was employee called from work to the boss's office? Was there an atmosphere of 'unnatural formality'?

"(5) Truthfulness of the reply."

When these five standards are applied to the facts of the present case, in my view they do not support a finding that the interrogation was coercive.

The Board found six instances of more or less casual conversations. These are the types of interchange of views which normally would be expected to take place on the premises of a plant during a union organization campaign. Most of the discussions took place at the employees' work station or around the plant yard. The conversations occurred between employees and low ranking supervising personnel, viz., the personnel manager, the plant security officer, an assembly foreman, a machine shop foreman and a foundry foreman. The atmosphere was casual and the discussions were brief. No coercion, threats or intimidation were expressed. None of the employees answered in a way which would indicate that they felt coerced and intimidated. I do not believe any of these discussions, when considered in their context, are reasonably susceptible of an interpretation as implying threats, intimidation or coercion. In a small plant the exchange of ideas, comments and arguments between employees and supervisors is to be expected. I do not consider this type of grassroots discussion to be coercive in nature.

As said by this Court in N.L.R.B. v. Welsh Industries, Inc., 385 F.2d 538, 540:

"To offend the Act, interrogation must rise to the level of coercion or restraint. Burke Golf Equipment Corp. v. NLRB, 284 F.2d 943, 944 (6th Cir. 1960); United Fireworks Mfg. Co., Inc. v. NLRB, 252 F.2d 428, 430 (6th Cir. 1958); NLRB v. Tennessee Coach Co., 191 F.2d 546, 555–556 (6th Cir. 1951). * * * The burden rests with the General Counsel to prove his charges; it is not required that the employer justify each innocuous inquiry about a union campaign. Lawson Milk Co. v. NLRB, 317 F.2d 756, 760 (6th Cir. 1963); NLRB v. Cleveland Trust Co., 214 F.2d 95, 99 (6th Cir. 1954)."

Applying the standard of review announced by this Court in N.L.R.B. v. Surprenant Mfg. Co., 341 F.2d 756, I would hold that the inference drawn by the Board to the effect that the conversations constituted a threat or coercion is not reasonable or permissible under the record in this case. Viewing the entire record, the surrounding circumstances and the settings in which the conversations took place, it is my view that the comments of supervisory personnel were not such as to constitute unlawful coercion or restraint of employees in their rights under the Act. While recognizing that it is the province of the Board to draw reasonable inferences from the evidence, I view these six isolated conversations of no coercive consequence.

I would deny enforcement.