**ANSERPHONE, INCORPORATED,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1309.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 20, 1980.
Decided Oct. 8, 1980.

John T. Milligan, Ned C. Gold, Hoppe, Frey, Hewitt & Milligan, Michael G. Marando, Warren, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, John G. Elligers, Florence L. Smith, Carol DeDeo, N.L.R.B., Washington, D. C., Bernard Levine, Director, Region 8, N.L.R.B., Cleveland, Ohio, for respondent.

Before WEICK and MARTIN, Circuit Judges, and DUNCAN, District Judge.*

PER CURIAM.

This is a petition of Anserphone, Inc., located in Youngstown, Ohio, to review and set aside a decision and order of the National Labor Relations Board issued February 17, 1978, reported at 236 N.L.R.B. 112.

The Board found that the company had violated Section 8(a)(1) of the Act by creating the impression that employees' union activities were under surveillance, by coercively interrogating employees, and by asking an employee for a copy of the affidavit she gave to a Board agent. The Board further found petitioner violated Section 8(a)(3) and (1) of the Act by discharging employee Beverly Miller because of her union activities.

The record in this case is confused at best. Certain facts found by the Administrative Law Judge are not supported by the record. The only substantial issue we see is the discharge of employee Beverly Miller. The evidence concerning employee Miller's

---

* Honorable Robert M. Duncan, United States District Judge for the Southern District of Ohio, sitting by designation.

dismissal, although showing that she was involved in a union organizational effort and that at least one supervisor was aware of her participation, also established that her presence was not always harmonious with other employees. The record further indicates that Miller may well not have been dismissed, despite evidence of conflicts with fellow workers, had the intolerable incident of misconduct not occurred the day before her dismissal. We do not agree with the assertion that the evidence showed Miller was a valued and trusted employee because of her "promotion" to night shift supervisor, a position which she left of her own accord. While her conduct was reprehensible, she was subject to discharge for a long period prior to actual discharge. The circumstances of her discharge support the conclusion of the Administrative Law Judge that the timing of her discharge was more a result of union activity than her work performance.

 With regard to creating an impression of surveillance of union activities, we conclude the record evidence shows the company's surveillance, if any, was limited to a few off–handed statements made by one supervisor. There was no evidence that this supervisor ever communicated her knowledge of Miller's involvement in an organizational effort to Warner, who made the decision to dismiss Miller. A discriminatory motive cannot be inferred on the part of the company from casual statements made by company supervisors to employees. *N.L.R.B. v. Swan Super Cleaners, Inc.*, 384 F.2d 609 (6th Cir. 1967). We do not believe the company letters sent out to employees discouraging union participation because it would not be in their best interest can be characterized as coercive.

 We cannot find evidence to support the conclusion that the interviewing of a few employees by Anserphone's representatives prior to an unfair labor practice hearing constituted coercive interrogation. One employee in fact refused to be interviewed, indicating she was made not to fear company reprisal for failure to give a statement. It is well–settled that an employer is privi-

leged to interview employees for the purpose of discovering facts relevant to issues raised in an unfair labor practice case to aid in preparation of the case. *Surprenant Mfg. Co. v. N.L.R.B.*, 341 F.2d 756, 762 (6th Cir. 1965). Further, there is no evidence in the record to indicate that the employee who furnished the company representative with a copy of the affidavit she submitted to the Board did so out of any fear, rather it appears she did it in the spirit of cooperation.

Therefore, the Board's order to reinstate Beverly Miller is enforced. However, enforcement of the remainder of the Board's order is denied.