NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MARSH SUPERMARKETS, INC.,
Respondent.

No. 14202.

United States Court of Appeals
Seventh Circuit.

Dec. 20, 1963.

**110**

Labor Relations Bd., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Elliott Moore, Atty., National Labor Relations Bd., for petitioner.

William E. Roberts, Robert A. Lichtenauer, Indianapolis, Ind., for respondent.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

The Board seeks, under § 10(e) of the National Labor Relations Act,[1] enforcement of its cease and desist order against respondent which the Board found guilty of unfair labor practices at its Yorktown and Muncie, Indiana places of employment.

The union[2] lost a decertification election at the six Marsh stores in Muncie, and a representation election at its Yorktown warehouse. The union filed objections to the elections and subsequently the Board's General Counsel issued a complaint. The case before us is a consolidation of the issues in the objection and under the complaint.

The Board found that Marsh was guilty of unfair labor practices in violation of § 8(a) (1) of the Act and ordered both the Muncie and Yorktown elections set aside;[3] and further found that Marsh had violated §§ 8(a) (3) and 8(a) (1) of the Act by discharging employee Farinella and shortening the regular work hours of employee Wulff during a two week period.[4] 140 N.L.R.B. 899 (1963). The Board's order was entered in accordance with these findings.

Subsequent to the Board's order of January 28, 1963, a second election was held at Yorktown, on May 23, 1963. The union again lost the election, and the Board certified the result. Because this subsequent election was held and the re-

---◇---

Marcel Mallet-Prevost, Asst. Gen. Counsel, Harold B. Shore, Atty., National

1. 61 Stat. 136 (1947), as amended 73 Stat. 519 (1959), 29 U.S.C. § 151 et seq. (1956).

2. Local 1441, Retail Clerks International Ass'n, AFL-CIO.

3. The Examiner had concluded that Marsh had violated § 8(a) (1) with respect to only the Muncie election.

4. The Examiner found that Marsh had unlawfully shortened employee Wulff's working hours during a three week period.

sult certified, respondent contends that portion of the Board's order with respect to its conduct at the Yorktown election of April 21, 1962, is moot. It relies on General Engineering, Inc. v. N. L. R. B., 311 F.2d 570 (9th Cir. 1962).

We are not persuaded that we should follow the General Engineering decision which relied solely upon statements in N. L. R. B. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 428, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947). Those statements beg the question of mootness and are concerned with procedure.

■■ When the Board finds that unfair labor practices have been committed, it is entitled to have its order enforced by the courts to prevent repetition of that unlawful conduct in the future. Neither compliance with the Board's order, N. L. R. B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067 (1950), nor a subsequent certification of the union as bargaining representative, N. L. R. B. v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831 (1938), renders the cause moot.

In a factual situation close to the one at bar, the Second Circuit in N. L. R. B. v. Clark Bros. Co., 163 F.2d 373 (2d Cir. 1947), decided that the holding of a second election, as ordered by the Board, and the certification of an independent association as bargaining representative, did not render moot the question whether the company's conduct in the original election violated the Act. The court said, 163 F.2d at 375, "The CIO will doubtless continue its organizational efforts and may hereafter petition for another election. If the court makes no decision as to respondent's former conduct, it may then be repeated; hence a decision as to its legality will not be a futile exercise of jurisdiction."

■ In the case before us if the Board's order is justified, it is entitled to have it enforced as a means of insuring that in future elections the conduct may not be repeated. We conclude the Yorktown questions are not moot.

■ To support its conclusion that Marsh violated § 8(a) (1) at both Yorktown and Muncie, the Board found speeches of Marsh's officials to employees at Muncie and Yorktown contained threats of loss of benefit and economic reprisal.[5] The statements found to have been made are that "if a union got in and we started negotiations * * *, everything would be wiped clean," and that the employees would lose some benefits, especially the existing vacation plan, and would have to "start from scratch."

The Board relied on its decision in Dal-Tex Optical Co., 137 N.L.R.B. 1782 (1962). Respondent relies upon the Board's decision in Universal Producing Co., 123 N.L.R.B. 548 (1959). The "only specific language in the speech" in Universal is short of, and the language used by the "Employer's president" in Dal-Tex went farther than, that before us. We cannot say the Board erred in concluding that the statements of respondent's official—which, in our view, fall between those in Universal and Dal-Tex—were not protected by § 8(c) and that they violated § 8(a) (1) of the Act. The Board could have reasonably inferred that the "listener-employees" took the statements as threats of loss of benefits and of economic reprisal. Hendrix Mfg. Co. v. N. L. R. B., 321 F.2d 100, 104 (5th Cir. 1963).

We think there is substantial evidence on the record as a whole to support the Board's finding that Marsh's conduct interfered with, restrained and coerced its employees in violation of § 8(a) (1) of the Act, and that as a result both elections must be set aside.

5. § 8(c) of the Act, 29 U.S.C. § 158(c) provides:
"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice * * * if such expression contains no threat of reprisal or force or promise of benefit."

■■ There was substantial evidence also on the record as a whole to support the Board's findings that a "carry-out boy" was asked by a "district supervisor" whether he had any problems with which he needed help, or any questions about the election, and if he was "going to make the right vote;" that another employee was told that if the union was rejected she would have the benefit of less night work; and that employee Wulff was impliedly threatened with discharge for union activity through the profane and abusive language of Marsh's supervisor, Franklin, suggesting that she quit. The conclusion that such conduct violates § 8(a) (1) of the Act is not contrary to law.

■ These actions were not isolated from the totality of respondent's conduct, which according to the justified findings was not "a fair and friendly attitude at all times * * *" as in N. L. R. B. v. Tennessee Coach Co., 191 F.2d 546, 555 (6th Cir. 1951). Although the Board's findings are based on contradicted testimony we see no reason to disturb the resolution of the credibility of the witnesses as found by the Trial Examiner and the Board. Sunshine Biscuits, Inc. v. N. L. R. B., 274 F.2d 738, 741 (7th Cir. 1960).

■ We see no reason either to disturb the Board's conclusion that Marsh discharged produce manager Farinella for union activities, in violation of § 8 (a) (3) of the Act. The findings on which the Board made its conclusion have substantial basis in the record as a whole and support the inference that Farinella was discharged not for reasons of inadequate job performance, but for union activity. Farinella, at the time of his discharge, had ten years seniority, the greatest seniority of any of Marsh's produce managers. He was president of the union, and the most active in union activities of any employee. A month before his discharge he was told of respondent's "disillusionment with him" as president of the union. The ostensible immediate reason for his discharge was the "poor condition of his department." But on the day of his discharge, the busiest day of the week, he was without his assistant, had to help unload the produce truck, and was unable to finish placing the produce in the store. The officials first acted as though his firing depended on whether he asked for help. Neither Farinella nor his store manager was asked at that time whether he had. The Examiner credited Farinella's contradicted testimony that he had. In any event, whether he had or not was later said to be "beside the point." His store manager had not recommended, and had no previous knowledge of, the discharge as was normal company procedure.

We do not agree that respondent's "dollars per man hour" graph is proof positive of Farinella's job performance. There is nothing in the record to show that whatever information can be derived from the exhibit, which was not in existence at the time, was relied upon in discharging Farinella. We think the General Counsel could be found to have borne the burden, Portable Electric Tools, Inc. v. N. L. R. B., 309 F.2d 423 (7th Cir. 1962), of showing affirmatively by substantial evidence that Farinella was discharged for union activity.

■ We disagree with the Board's finding that respondent discriminated against employee Wulff, in violation of § 8(a) (3) of the Act, during the two week period before June 3, 1961. There is no substantial evidence, either in the testimony or in General Counsel's exhibit number six,[6] for finding that Wulff's straight-time had been reduced.

For the reasons given, we think the Board is entitled to the enforcement of its order, except as to the two week reduction of employee Wulff's straight-time hours before June 3, 1961.

The Board's order is enforced as modified.

6. A listing of the regular and overtime hours worked by Wulff, along with her weekly gross pay, during the period January-October, 1961.