**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**STORACK CORPORATION, Respondent.**

**No. 15338.**

United States Court of Appeals
Seventh Circuit.

Feb. 28, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Hans J. Lehmann, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Nancy M. Sherman, Atty., N. L. R. B., Washington, D. C., for petitioner.

Gerald A. Gitles, Maurice S. Weigle, Michael L. Sklar, Chicago, Ill., for respondent.

Before DUFFY, SWYGERT and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This case is before the Court upon petition of the National Labor Relations Board, pursuant to Sec. 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C.A. § 151 et seq.), for enforcement of its order issued against respondent on June 17, 1964. 147 N.L.R.B. 493. This Court has jurisdiction of the proceedings, the unfair labor practices having occurred in the State of Illinois, where respondent is engaged in the manufacture, sale and distribution of steel storage racks and related products.

Based on the usual proceedings and after a hearing before a Trial Examiner, the Board found that respondent violated Sec. 8(a) (5) and (1) of the Act by refusing to recognize and bargain with International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO (herein referred to as Boilermakers or the Union), since July 26, 1963. The Board further found that respondent violated Sec. 8(a) (1) by coercively interrogating an employee with respect to his activities on behalf of the Boilermakers; by threatening its employees with loss of privileges because of their adherence to the Boilermakers, and by inviting representatives of the Teamsters [1] to organize its employees, and assisting representatives of that Union in their organizational efforts, in an attempt to undermine the majority status of the Boilermakers. The Board made its conclusions based upon and consistent with such findings.

The Board's order, entered June 17, 1964, requires respondent to cease and desist from the unfair labor practices found and from in any other manner infringing upon its employees' rights under the Act. Affirmatively, the Board's order requires respondent to bargain with Boilermakers upon request and to post appropriate notices.

Respondent here raises only two issues: (1) that it was not in violation of Sec. 8(a) (5) because of its good faith doubt that Boilermakers, at the time it sought recognition, represented a majority of respondent's employees as their bargaining agent, and (2) that enforcement of the Board's order should be denied or at any rate modified by reason of certain post-order proceedings which respondent sought unsuccessfully to invoke.

In view of respondent's perfunctory contention relative to the first issue, no purpose could be served in a detailed recital of the evidence relied upon by the Board. However, a brief statement on this phase of the case is of some pertinency inasmuch as it bears a relation to the second issue. In July 1963, respondent had 24 employees in what is conceded constituted an appropriate bargaining unit. During the period from July 18 to July 23, 1963, 16 employees signed authorization cards designating Boilermakers as their bargaining agent.

By letter dated July 25, 1963, Michael Wood, an international representative of Boilermakers, informed respondent that it represented a majority of the production and maintenance employees and demanded recognition as their exclusive bargaining representative. The letter stated that if the company had any doubt as to its claim of majority representation, the Union would be willing to submit signed authorization cards to a neutral third party, to be mutually agreed upon, and to allow such party to compare the cards with respondent's payroll. On July 25, 1963, Boilermakers also filed with the Board a petition for election. Respondent received the letter from Wood on July 26, and it is admitted that it has refused to bargain with the Union since that date.

■ On July 29, 1963, Wood called the company's general manager, James Gordon, and asked for an answer to the Union's request for recognition. Wood repeated the offer contained in his letter of July 25, to submit the authorization cards to a third party to check the Un-

ion's majority claim. Respondent refused to recognize the Union on the asserted basis that it had doubt as to its majority status and that it would require an election as proof of the Union's claim. The Board found that there was no basis in the evidence for a good faith doubt on the part of respondent that the Union represented a majority of the employees. Respondent argues that its good faith doubt was raised at least in part from the fact that the Union at the time it sought recognition by way of the authorization cards also petitioned for an election. There is no merit to this contention. As this Court stated in National Labor Relations Board v. Elliott-Williams Co., Inc., 345 F.2d 460, 464:

"An employer may refuse an unequivocal demand for recognition and bargaining only on the basis of a good faith doubt of the genuineness of the union's claims, and the union does not withdraw or waive its demand by seeking an election when the employer makes it clear that it will not recognize the union. [Citing cases.]"

■ The record clearly reveals that the Board's finding in this respect had ample support and that respondent violated Sec. 8(a) (5) by its refusal to recognize and bargain with the Union.

On July 6, 1964, subsequent to the Board's decision, respondent filed a motion to reopen the record for the purpose of submitting evidence with respect to (1) the moving of its plant and employees from Evanston, Illinois, to the southern part of Chicago, and (2) alleged expansion of the unit, alteration of pre-existing job classifications, rapid increase in the number of employees in the unit, changes in the make-up of its work force from predominantly skilled to predominantly unskilled labor, and heavy turnover among its employees. It contended that these factors resulted in such a change in the unit as to invalidate the premises on which the Trial Examiner based his decision, and requested a hearing.

The Board denied this motion and, on October 20, 1964, respondent filed a motion for reconsideration supported by an affidavit of one of its officers, in which it was stated that on January 1, 1964, it received a notice to vacate its Evanston premises, that it selected its Chicago plant on January 15, 1964, and that it moved to that location on February 3, 1964. The affidavit further stated that on January 1, 1964 (a month after the close of the hearing), it had 25 employees, about 18 of whom had been on the payroll on August 1, 1963 (6 days after its refusal to bargain), and that about the same proportion of "old" to "new" employees existed in February 1964, but that as of October 16, 1964, the company had 86 production employees, of whom only 10 had been on the payroll as of July 1, 1963.[2]

The Board denied respondent's motions to admit the evidence which respondent proposed relating to its changed situation, but both sides here consider and argue its merits as though it had been admitted. We shall do likewise.

Respondent argues in substance that its changed status occurred in the normal course of its business and for economic reasons. It emphasizes that in its changed status only a small proportion of its employees were members of the Union at the time it sought and was denied recognition and that a large proportion of its employees had no voice in the selection of Boilermakers as their bargaining unit. It follows, so it is argued, that the Board's order, if enforced, will not effectuate the purpose of the Act because a large proportion of its employees will be denied the right to choose freely their bargaining representative.

A reading of the many cases called to our attention clearly reveals that the contention has been widely rejected and any plausibility which it might formerly have had can no longer be entertained.

More than fifteen years ago, in Superior Engraving Co. v. N. L. R. B.,

183 F.2d 783, in an opinion written by Judge Walter C. Lindley, this Court disposed of the contention adversely to the employer on a similar factual situation. We can do no better than repeat in part what was there stated (page 793):

"Petitioner's final argument is that the Board's order should be set aside because it does not effectuate the policies of the Act. This contention arises out of the fact that, although only 10 of the 77 men currently employed by petitioner were employed by it in 1943, when the consent election was held, the Board's order will saddle the remaining 67 men with a bargaining representative with respect to which they have had no opportunity to vote, for or against. Petitioner contends that such a result is a perversion of the purposes of the statute, and insists that the policies of the Act would best be effectuated by an order requiring a new election to determine what union, if any, its employees desire to represent them. * * * more particularly, that the question of whether an employer should be required to bargain with a particular union previously selected by its employees or whether, in view of lapse of time and changed conditions, a new election should be held, is one for the Board to decide, N. L. R. B. v. P. Lorillard Co., 314 U.S. 512, 513, 62 S.Ct. 397, 86 L.Ed. 380."

On the following page we stated:

"It should also be observed that the bargaining relationship established by the Board's order is not a permanent one, Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 705, 64 S.Ct. 817, 88 L.Ed. 1020, and that, should the petitioner's employees, after the Union has been given a reasonable time in which to succeed as their bargaining representative, be dissatisfied with the Union, Section 9(c) of the Act provides a procedure by which *they* can assert that

2. According to a chart which was submitted to the Court during oral argument, 20

of the "old" employees were working at the new location in March 1964.

the Union is no longer their representative. Consequently, it appearing that the Board's order is appropriate for present enforcement, judgment will enter enforcing it."

In N. L. R. B. v. Katz et al., 369 U.S. 736, 748 (note 16), 82 S.Ct. 1107, 8 L.Ed. 2d 230, the Court directed enforcement of the Board's order even though a majority of the employees had repudiated the Union subsequent to the time it had obtained recognition as the bargaining agent. See also Brooks v. N. L. R. B., 348 U.S. 96, 103, 75 S.Ct. 176, 99 L.Ed. 125.

In Irving Air Chute Co. v. N. L. R. B., 2 Cir., 350 F.2d 176, 182, the Court in allowing enforcement of the Board's order cited many cases for the proposition, " 'It is for the Board not the courts to determine how the effect of prior unfair labor practices may be expunged'."

We have examined but are not impressed with the few cases cited by respondent in support of its contention that enforcement of the order would not effectuate the purpose of the Act. Such cases rest upon factual situations radically different from that here. In fact, most of such cases as well as respondent's argument here stem from a statement in N. L. R. B. v. Seven-Up Bottling Co., Inc., 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377:

> "This is not to say that the Board may apply a remedy it has worked out on the basis of its experience, without regard to circumstances which may make its application to a particular situation oppressive and therefore not calculated to effectuate a policy of the Act."

Evidently the Court concluded that the reasoning was not applicable in that case for it reversed a decision of the Court of Appeals which had denied enforcement of the Board's order. In view of the cases which we have cited, and many others which could be cited, we think it is of no relevancy in the instant situation.

The Board's petition for enforcement of its order is allowed.