**BORDEN CABINET CORPORATION,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 15775.

United States Court of Appeals
Seventh Circuit.

April 12, 1967.

---

Fred P. Bamberger, Robert H. Hahn, Evansville, Ind., Arthur C. Nordhoff, Jasper, Ind., for petitioner, Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., Nordhoff & Nordhoff, Jasper, Ind., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., N. L. R. B., Washington, D. C., for respondent.

Before DUFFY, Senior Circuit Judge, and SWYGERT and FAIRCHILD, Circuit Judges.

DUFFY, Senior Circuit Judge.

Petitioner seeks to review and set aside an order of the National Labor Relations Board issued against it on June 24, 1966, and reported at 159 N.L.R.B. No. 99. In its answer, the Board has requested that its order be enforced in full.

The Board found that in order to defeat the Union in a representation election, the Company coercively interrogated and threatened its employees in violation of Section 8(a) (1) of the National Labor Relations Act. The Board's order directs Borden to cease and desist from the unfair labor practices found. Affirmatively, Borden is required to bargain with the Union upon request and to post the customary notices.

In view of the absence of Company exceptions, there is no dispute before us as to the unfair labor practices found by the Board except for the Board's determination that the Company's refusal to bargain was a violation of Section 8(a) (5) of the Act.

The record establishes that a Board-conducted election was held on Novem-

ber 20, 1963, and that the Union lost this election. However, that election was set aside and a new election was ordered September 14, 1964, when the Board found that the Company had sought to discourage unionization by illegally threatening and interrogating employees and by discharging six employees because of their union sympathies.

The second election was scheduled to be held March 5, 1965. The Board found that shortly before that date, the Company again engaged in illegal interrogation of employees and made implied threats of reprisals. Futhermore, three days before the date of the election, the Company posted a notice that employees' hospital benefits under the employees' group insurance, would be increased. The Board found the Company timed this announcement so as to interfere with the employees' freedom of choice in the election.

Immediately after losing the second election by nine votes, the Union started to obtain authorization cards signed by Company employees. By May 20, 1965, 138 employees out of 248 in an admittedly appropriate unit signed up with the Union. This fact was communicated to the Company by a letter dated May 20, 1965. The Union offered to submit its authorizations for an impartial check, and requested a meeting for the purpose of negotiating a contract. The Company refused stating the Union's request was untimely. The Union filed a charge alleging a refusal to bargain. The proceedings on that charge were consolidated with the proceedings arising out of the employer's alleged pre-election misconduct.

On March 9, 1966, the Trial Examiner found that Borden had engaged in certain unfair labor practices and recommended that the election which had been held on March 5, 1965 be set aside and that a new election be held.

The Board overruled the Trial Examiner's determination that another elec-

tion should be held. It dismissed the petition for an election and ordered petitioner to recognize the Union as the collective bargaining representative of the employees. The Board found that the Company's refusal to recognize and bargain with the Union was in bad faith and not because of any good-faith doubt of the Union's majority.

The Board's order and decision stated:

"The foregoing unfair labor practices, considered in the light of Respondent's earlier history of union animus and unfair labor practices, convince us, and we find, that Respondent's overall conduct evinced a rejection of the collective-bargaining principle and that its refusal on May 24, 1965, to recognize and bargain with the Union was in bad faith and not because of a good-faith doubt of the Union's majority."

A Board-conducted election under Section 9 is not the exclusive means by which a Union's majority status may be established. United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 71–72, 76 S.Ct. 559, 100 L.Ed. 941.

When a Union has obtained authorization cards signed by a majority of the employees in an appropriate unit, the employer violates Section 8(a) (5) if, absent a good-faith doubt of the Union's majority status, the employer refuses to recognize and bargain with the Union. National Labor Relations Board v. Frantz and Company, 7 Cir., 361 F.2d 180, 182; National Labor Relations Board v. Storack Corporation, 7 Cir., 357 F.2d 893, 895.

Here, the Company never challenged the validity of the cards obtained by the Union between March 6 and May 20, nor did it express doubt that the cards had been signed by a majority of the unit employees. But the Company vigorously insists that it was acting in good faith because Section 9(c) (3)

of the Act relieved it of its duty to recognize and bargain with the Union.[1]

Our decision in the instant case depends to a considerable degree as to the application or non-application of a recent decision of this Court, to-wit: Conren, Inc. v. National Labor Relations Board, 7 Cir., 368 F.2d 173 (October 1966). In *Conren,* there was a dissent in part by Judge Kiley. However, a petition for a rehearing en banc was denied by this Court. The United States Supreme Court thereafter denied a petition for certiorari, 386 U.S. 974, 87 S.Ct. 1165, 18 L.Ed.2d 134 (35 Law Week 3328).

In *Conren,* we stated (page 174):

"One of the principal issues this proceeding presents for our determination is whether the fact that the Union's demand for recognition and the commencement of contract negotiations, which Conren ignored, was made within less than one year—actually some nine months and sixteen days —after a valid Board conducted representation election in which the employees of the unit involved rejected both the Union and another labor organization (Teamsters, Chauffeurs, Warehousemen and Helpers Local Union 144) in favor of 'no union' precluded the existence of any duty on the part of Conren to recognize and bargain with the Union."

In another portion of the *Conren* opinion, page 175, we stated the issue raised was " * * * whether an employer is required to recognize and bargain with a union within a year following a valid election on the basis of a showing of authorization cards executed by a majority of the employees."

In *Conren,* we decreed that the Board's order be enforced. Following the language of *Conren,* we held the employer was required to recognize and bargain with the Union within a year following a valid election on the basis of the showing of authorization cards executed by a majority of the employees.

In the case at bar, we have an election that was found to be invalid by reason of proscribed conduct on the part of the employer. The decision in Conren, Inc. v. N.L.R.B., supra, is the law of this Circuit. We must apply that law.

█ In the instant case, the Company has been found to have destroyed two elections as a reliable test of the Union's strength. There is substantial basis in the record before us for the Board's finding that the Company did not refuse to recognize the Union merely because the Union had received less than a majority in the second election, but rather, was motivated by a desire to frustrate the employees' right to organize and bargain collectively.

█ Under these circumstances, it was proper for the Board to order the Company to recognize and bargain with the Union rather than ordering that still another election be held. National Labor Relations Board v. Frantz and Company, supra, 361 F.2d at 183; Irving Air Chute Company v. National Labor Relations Board, 2 Cir., 350 F.2d 176, 182.

The petition of Borden to set aside the order of the Board entered on June 24, 1966, is denied.

The petition of the National Labor Relations Board that said order be enforced is granted.

Order enforced.

1. Section 9(c) (3) provides—"No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held."