**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TOM'S SUPERMARKET, INC., Respondent.**

**No. 16015.**

United States Court of Appeals Seventh Circuit.

June 27, 1967.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Allison W. Brown, Jr., Atty., Marcel Mallet-Prevost, Asst. General Counsel, Eugene B. Granof, Atty., N. L. R. B., Washington, D. C., for petitioner.

Palmer C. Singleton, Jr., Daniel F. Kelly, Joel C. Levy, Hammond, Ind., Tinkham, Beckman, Kelly, & Singleton, Hammond, Ind., of counsel, for respondent.

Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge and CUMMINGS, Circuit Judge.

DUFFY, Senior Circuit Judge.

The Labor Board petitions for enforcement of its order issued against respondent on March 30, 1966.[1]

The Labor Board found respondent had violated Sections 8(a) (1) and 8(a) (5)

---

1. The decision is reported at 157 N.L.R.B. No. 106.

and (1) of the National Labor Relations Act. Such alleged violations concerned the attempt of Local No. 25, Retail Clerks International Association, AFL-CIO, to organize the employees of Tom's Supermarket, Inc., located at Rensselaer, Indiana.

The Board found respondent had violated Section 8(a) (5) and (1) of the Act by refusing to recognize and bargain with the Union. The Board further found respondent violated Section 8(a) (1) of the Act by coercively interrogating and threatening employees in order to dissuade them from their allegiance to the Union.

Prior to March 20, 1965, respondent had not been unionized. There is no history of anti-union animosity. The manager, Thomas Clark, had no previous experience in dealing with labor unions.

John Case, the secretary of the Union, testified he met with approximately eighteen employees of the respondent on March 20, 1965, at which time he solicited and secured execution of union authorization cards by eleven of respondent's employees. At about the same time Case received six additional authorization cards from employee Judy Rosenkranz, including one from employee Don Tweedie about which their was some dispute.

On March 26, a meeting was held at the office of respondent's attorney. Case and Sanford representing the Union, asserted the Union represented a majority of respondent's employees. Respondent's attorney asked for proof. The Union agents handed over seventeen authorization cards to the attorney and manager Clark who briefly examined and counted them. Case and Sanford said they believed respondent had twenty-seven employees. Clark said he thought there were thirty.

Respondent insisted that a Board election should be held to determine whether the Union represented a majority of the employees. Respondent offered to consent to the holding of such an election. However, the Union was not agreeable.

We find ourselves in agreement with the Court of Appeals for the Second Circuit when in National Labor Relations Board v. Flomatic Corporation (1965), 2 Cir., 347 F.2d 74, 78, that Court stated " * * * [I]t is beyond dispute that secret election is a more accurate reflection of the employees' true desires than a check of authorization cards collected at the behest of a union organizer. See N. L. R. B. v. Hannaford Bros. Co., 261 F.2d 638, 641 (1st Cir. 1958) ; * * *."

In spite of the fact that Congress provided for a secret Board election, and we agree that such would have been a preferable course in this case, we hold the alternative method of collecting authorization cards may be used. Borden Cabinet Corp. v. National Labor Relations Board, 7 Cir. (1967), 375 F.2d 891; Conren, Inc. v. National Labor Relations Board, 7 Cir. (1966), 368 F.2d 173, cert. den. 386 U.S. 974, 87 S.Ct. 1165, 18 L. Ed.2d 134.

The Clark interviews which we shall hereafter describe in detail, confirmed that more than fifty per cent of the employees supported the Union. It then became the duty of the respondent to recognize and bargain with the Union.

Respondent claims that the Union would not permit them to compare the signatures upon the authorization cards with the signatures that would be found in the records of the Company. The short answer to this is that the respondent made no such request.

We hold that portion of the Board's order based upon a violation by the respondent of Section 8(a) (5) and (1) of the Act, by refusing to recognize and bargain with the Union, will be enforced.

We do not think the record before us sustains the Board's finding that respondent was guilty of violating Section 8(a) (1) of the Act by engaging in conduct which tended to coerce, restrain or interfere with the employees' rights under the Act.

Tom Clark did interview thirty of the thirty-one employees on April 2, 1965.

It was stipulated that the interviews were in the Produce Room, that the employees were not under oath, and that no signed statement was requested of any of the employees. It was further stipulated that in the course of each interview, Mr. Clark stated to each employee "I want to determine how many authorization cards have been signed by the employees. Your job is not in danger. You may speak freely. If you desire, you are free to go at any time. I am not inquiring into how you feel for or against the Union, and you are under no obligation to discuss the Union."

 It seems likely that Clark was acting upon legal advice as he frequently referred to some notes which he had. Certain it is that these employee interviews, free from any anti-union atmosphere or background, and at a distance from the office of the manager or owner, were free from coercion, threats or promise of reward. Clark was entitled to legitimate information on the subject about which he inquired. Consistent with the rule laid down by the Board in Blue Flash Express, Inc., 109 NLRB 591, we hold that there was no violation of Section 8(a) (1) by reason of the interview with Clark held on April 2, 1965.

The Board also insists that there was a Section 8(a) (1) violation when Clark had a conversation with some of the stock boys who were mostly high school students. There was no speech by Clark on this occasion. In fact, most of what Clark said was in response to various questions asked by the stock boys.

The conversations with the stock boys were in the friendly atmosphere of a small town grocery store where it was apparent a very close and personal relationship existed between the president and manager on the one side and the employees on the other.

Our holding is that no part of the Board's order will be enforced which is based upon alleged violations of Section 8(a) (1) of the Act by coercively interrogating and threatening employees.

The order of the National Labor Relations Board, issued against respondent herein, will be enforced in part and denied enforcement in part.

Enforced in part, denied enforcement in part.