**LINCOLN MANUFACTURING CO., Inc.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 15914.

United States Court of Appeals
Seventh Circuit.

July 7, 1967.

Certiorari Denied Dec. 4, 1967.

See 88 S.Ct. 470.

**412**

Madison P. Neilson, Chicago, Ill., Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., of counsel, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Harold B. Zanoff, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Gary Green, Atty., N. L. R. B., Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

The petitioner, Lincoln Manufacturing Company, Inc., hereinafter called "Lincoln," pursuant to § 10(f) of the National Labor Relations Act, as amended, Title 29 U.S.C. § 151 et seq., § 160(f), seeks to set aside an Order of the National Labor Relations Board issued October 12, 1966, reported at 160 NLRB No. 146, 1966 CCH NLRB ¶20,784, p. 26,744. The Board has cross-petitioned under § 10(e) of the Act for enforcement of its Order to cease and desist from unfair labor practices or other infringement on employees' rights, to bargain collectively with Local Union 503, Sheet Metal Workers' International Association, AFL-CIO (hereinafter called the "Union") on request, and to post appropriate notices.

The Board found that Lincoln violated § 8(a) (5) and (1) of the Act by refusing to bargain with the Union, and had independently violated § 8(a) (1) by acts of interference, restraint and coercion to undermine the Union, dissipate its majority status and avoid the duty to bargain.

Union organizer Frank Elbrink testified that, after he had addressed a meeting of 22 Lincoln employees late in March, 1965 on the benefits of union representation, explaining that the Union as employee representative could negotiate for a contract with Lincoln on wages, seniority, job security, holidays, vacations, etc., the employees present unanimously voted to be represented by the Union. He said he told the employees of his then opinion that Lincoln's President D. Dean Rhoads would recognize the Union without an election.

Under date of May 13, 1965, on the basis of authorization cards from 21 of the 29 employees in the unit, Mr. Elbrink wrote Lincoln defining the unit and asking for recognition and bargaining. Lincoln stipulated that this letter was received on or about May 17, 1965, the same day the Union filed a Representation Petition seeking an election.

A consent election was held on July 8, 1965, at which 11 of the 28 then eligibles voted for and 16 against the Union. One employee did not vote.

On the basis of the Union's objections, the Board set this election aside.

The cards signed by the 21 employees read:

> AUTHORIZATION FOR REPRE-
> SENTATION
>
> I, the undersigned, hereby authorize the SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, or any affiliated Local Union thereof, to represent me for purposes of Col-

lective Bargaining, and in my behalf, to negotiate and conclude all agreements as to hours of labor, wages, and other conditions of employment.

After hearing testimony as to the statements made in connection with the cards, the Trial Examiner found no support for Lincoln's objections that 11 of the cards were signed on representations that despite the clear wording of the card its sole purpose was to secure an election. There were some conflicts and inconsistencies in the testimony of the various witnesses. Granting that resolution of certain issues of credibility had to be made by the Trial Examiner who heard the witnesses, we agree that the record supports his conclusion, as affirmed by the Board, that on May 17, 1965, when Lincoln received the Union's request for recognition, a majority of the employees in the unit had authorized the Union to act as their collective bargaining representative.

Lincoln argues that the May 13, 1965, letter was defective in that it made no claim to majority status. The letter read:

(Letterhead of)
SHEET METAL WORKERS INTERNATIONAL ASSOCIATION

May 13, 1965

Mr. D. Dean Rhoads,
    President
Lincoln Manufacturing
    Co., Inc.
P. O. Box #1229
Ft. Wayne, Indiana 46808

Dear Mr. Rhoads:

Request is hereby made that Lincoln Manufacturing Co., Inc. recognize and bargain with Sheet Metal Workers' International Association, Local #503 for a collective bargaining agreement, covering Production, Maintenance, Shipping and Receiving, Truck Drivers and Janitorial employees of your Company for wages, hours of work, and other working conditions of the above-mentioned employees.

I should be most glad to meet with you to discuss this matter at your con-venience. I can be reached at the above address.

Awaiting your reply, I remain,
            Yours truly,
            /s/ Frank Elbrink
            International Organizer
FE:jo
Certified Mail

Unlike the communication in Sheboygan Sausage Co., Inc., 156 NLRB #130, p. 1490 (1966), on which Lincoln relies, the letter did request bargaining, contained the Union's name and address so that a reply could have been made, and described the bargaining unit. As the Trial Examiner concluded, a claim to majority status was inherent in the explicit request for recognition and bargaining. Even in Sheboygan, it was noted (p. 1501) that the mere filing of an election petition did not bar the operative effect of a simultaneous demand for recognition and bargaining and that in other contexts a claim to represent employees might reasonably be understood as a claim to majority representation.

On or about the same day that Lincoln agreed orally to a consent election, May 20, 1965, it mailed announcements of its 1965 vacation plans to the employees, in disregard of the policies and rules set out in Lincoln's "Handbook" which had been distributed to all employees, under which none of the employees would have been entitled to a vacation in 1965. Each employee was told how many days of paid vacation he was entitled to receive and asked to indicate the days he desired to take. Some employees were offered the choice of working on vacation days to receive additional wages. One such letter read:

(Letterhead of)
LINCOLN MANUFACTURING CO. INC.

May 20, 1965

Mr. Wayne L. Long
2518 Warsaw St.
Fort Wayne, Ind.

Dear Wayne,

This is to keep my promise to let you know the details of our vacation plans for this summer. It is dif-

ficult to set a date that will suit each family * * * but, this year we are going to see how it works out to close the plant during the school vacation period to benefit our co-workers with children in school.

We have chosen to close the plant and office for vacation the week of June 28th through July 5th; since July 5th is a holiday, this will give you more time off.

Our records show that you are entitled to 4 working days off at full pay in addition to July 5th.

We will keep a skeleton crew working the entire week of June 28th at regular pay for the benefit of the co-workers who are not entitled to a full weeks' vacation. You may work the days you are entitled to vacation if you apply and receive advance approval from Leonard. If so, you will receive a pay check for the vacation days plus regular time for the hours you work. If you have any questions concerning this, please ask Leonard, and we will get an immediate answer for you.

Your vacation pay check will be distributed on June 25th.

If this vacation plan works out well, perhaps we can, without setting a precedent this year, do the same next year.

Please fill out the form attached and place it in the suggestion box as soon as you decide on the days you wish to vacation during that week.

My best wishes to you and your family for a pleasant and restful vacation.

Very sincerely yours,
/s/ Dean Rhoads
President

Enclosure

President Rhoads testified that the plan to provide vacations for 1965 was the subject of consideration initiated in January or February, 1965, with a view to preserving good company-employee relations, but that the plans were announced only when completely formulated in mid-May, 1965. Perhaps the unfortunate timing was mere coincidence. The Board, however, was adversely influenced by Lincoln's withholding, for three months, the announcement of a policy allegedly changed early in the year to maintain good employee relations, and by the fact that at least one management official was apparently unaware of this change in policy as late as May 14, 1965. Lincoln argues that there is no evidence that it tried to capitalize on this change in policy, but we must agree with the Board that, whenever the policy change was formulated, the timing of the announcement and the conferring of an economic benefit on the employees during the week before the election were calculated to influence its outcome. N.L.R.B. v. Exchange Parts Co., 1964, 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed.2d 435; Browning Industries, Inc., 1963, 142 N.L.R.B. 1397, 1401. The Board was justified in holding that this action constituted interference with the rights of the employees under § 7, and therefore violated § 8(a) (1) of the Act.

It is sometimes difficult to draw the line between vigorous oral and written presentation of a company's position and veiled threats of economic reprisal. The three letters sent by President Rhoads and his address to the employees on the day before the election, when viewed as a whole, are susceptible of the interpretation made by the Board: that they contain implicit threats of loss of benefits and economic reprisals. N.L.R.B. v. Marsh Supermarkets, Inc., 7 Cir., 1963, 327 F.2d 109, 111, cert. den. 377 U.S. 944, 84 S.Ct. 1351, 12 L.Ed.2d 307.

The letters and the speech do support the conclusion drawn by the Board that Union success in the election would spell the end of currently enjoyed overtime for the employees and that President Rhoads would refuse to enter into a particular government contract if the Union were brought into the plant— threats calculated to dissipate the Union's majority status.

There was a conflict in the testimony as to the statements made by President

Rhoads when he took pictures of two of the employees who were distributing Union handbills on the highway near Lincoln's entrance after work on July 6th. The Trial Examiner credited the statements of the two employees that Mr. Rhoads said he could have them fired for what they were doing, rather than Mr. Rhoads' own testimony that the men agreed to have their pictures taken and that there was no further conversation, or that one of them had asked if Mr. Rhoads would fire them, but that he had not replied to the question.

■ This Court will rarely disturb determinations on issues of credibility made by the Trial Examiner and the Board. N.L.R.B. v. Marsh Supermarkets, supra, 327 F.2d 112; Sunshine Biscuits, Inc. v. N.L.R.B., 7 Cir., 1960, 274 F.2d 738, 741.

■ If this Court were considering this matter de novo, we might arrive at a contrary conclusion, but we are not at liberty to consider the matter de novo. The issue before us is whether substantial evidence on the record considered as a whole supports the Board's findings.

■ We find substantial evidence on the record as a whole to support the Board's findings that Lincoln engaged in coercive conduct in violation of § 8(a)(1) and § 8(a)(5) of the Act. The remedies prescribed are appropriate. N.L.R.B. v. Storack Corp., 7 Cir., 1966, 357 F.2d 893, 895, 897.

The petition for review is denied. Enforcement of the Board's Order is granted.

Petition for review denied; enforcement granted.

SCHNACKENBERG, Circuit Judge (dissenting).

From an examination of the record in this case I am convinced that the petitioner is justified in contending that the order of the Board should be set aside.