**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**VINYLEX CORPORATION and Everwarm Corporation, Respondent.**

**No. 18101.**

United States Court of Appeals
Sixth Circuit.

Dec. 31, 1968.

Clarice Feldman, Atty., N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael N. Sohn, Atty., N.L.R.B., Washington, D. C., on brief.

William P. Hutcheson, of Humphreys, Hutcheson & Moseley, Chattanooga, Tenn., for respondents.

Before WEICK, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

WEICK, Chief Judge.

The National Labor Relations Board (Board) in this proceeding seeks enforcement of its decision and order (160 NLRB 148 (1966)) which found that Vinylex Corporation and Everwarm Corporation (employer) violated Section 8 (a) (1) of the Act by threatening its employees with economic loss if they selected the union[1] as their collective bargaining representative, and further found that the employer violated Section 8(a) (5) and (1) of the Act[2] by refusing to recognize and bargain with the union.

During the course of the union's campaign to organize the employees, the employer addressed a letter to them, signed by its president and secretary-treasurer, in which it stated among other things: " * * * [T]hey [unions] are trouble makers in attempting to poison your minds with dissatisfaction * * * "; and further, " * * * we will do everything legally possible to defeat any Union that attempts to come in and create dissension amongst us." The letter further stated, contrary to the provisions of Section 9 of the Act, that in the event of unionization, the employees "would be unable to talk personally with management about any of our problems." The letter also suggested the possibility of strikes, strife and violence, and warned the employees:

"Your family suffers, employees lose their homes, their cars and your Company loses business."

The company's president and secretary-treasurer interviewed most of the employees in a warehouse adjacent to the factory, on company time. The meetings lasted from one-half to one and one-half hours, and sometimes longer. The officers made predictions of the possible loss of business if the union came in, and stated that the reason for the opening of the company's new plant in Florida was to guarantee delivery to a customer in the event of any calamity or job interruption. The secretary-treasurer told an employee that if he went on strike and refused to come back to work upon request, he would no longer have a job. The president gave erroneous information to the employees concerning a collective bargaining agreement with another employer.

While ordinarily both sides, during organizational campaigns, are allowed great latitude in freedom of expression, even to the extent of making predictions, Automation and Measurement Div., Bendix Corp. v. NLRB, 400 F.2d 141 (6th Cir. 1968), we are of the opinion, from consideration of all of the evidence in the case, that the Board could reasonably find coercion on the part of the company's high officers, and we are not disposed to disturb the finding as to the Section 8(a) (1) violation.

This leaves only the question as to the Section 8(a) (5) violation. The union had secured authorization cards signed by twenty-eight out of forty-

---

1. United Glass & Ceramic Workers of North America, AFL–CIO.

2. 29 U.S.C. § 151 et seq.

seven employees in the bargaining unit.[3] It made a written demand upon the company for recognition, and on the day when the demand was received, it petitioned the Board for an election.

The company did not reply directly to the demand for recognition. Instead it distributed to its employees an open letter of reply to the union, in which it did not question the union's majority status, but it expressed satisfaction that the union had modified its position by petitioning the Board for an election. The letter intimated that the union "knew that we would never enter into negotiations with your Union unless the employees of Vinylex and Everwarm were given an opportunity to state in a secret ballot election that they desire us to do so." The letter further stated: "We have never run away from a good fight and we shall not now do so."

 The filing of a petition for election does not in and of itself operate as a waiver or modification of the demand for recognition. Irving Air Chute Co. v. NLRB, 350 F.2d 176, 182 (2d Cir. 1965). Nor did the filing of such petition, under the circumstances of this case, excuse the company from bargaining. Lincoln Mfg. Co. v. NLRB, 382 F.2d 411, 413 (7th Cir. 1967); NLRB v. C. J. Glasgow Co., 356 F.2d 476, 479 (7th Cir. 1966); NLRB v. Security Plating Co., 356 F.2d 725, 727 (9th Cir. 1966); NLRB v. Armco Drainage & Metal Prods. Inc., 220 F.2d 573 (6th Cir. 1955); NLRB v. Model Mill Co., 210 F.2d 829 (6th Cir. 1954).

Here the company, in response to the demand for recognition, expressed no doubt about the majority status of the union; nor did it make any investigation to determine the truth or accuracy of the statements in the demand or the wishes of its employees. It flatly refused to be bound by anything except an election.

3. The Board determined that six students who worked only during their vacations, did not have sufficient community of

 The company did question before the Board the validity of some of the authorization cards. The cards were plain and unambiguous. The employees were able to read and write. The Board found no misrepresentations were made by the soliciting agents of the union. In our opinion, this finding is supported by substantial evidence.

Enforcement decreed.

interest with the other employees and were ineligible to vote. We agree with that determination.