**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C & C PACKING COMPANY, Respondent.**

**No. 22417.**

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1969.

**936**

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Joseph C. Thackery, Washington, D. C., Charles W. Henderson, Director, N.L.R.B., Melvin J. Welles, Washington, D. C., for appellant.

Lawrence L. Pavilack of Rawlins, Ellis, Burrus & Kiewit, Minne & Soreson, Phoenix, Ariz., for appellee.

Before JERTBERG and CARTER, Circuit Judges, and BYRNE*, District Judge.

BYRNE, District Judge:

The National Labor Relations Board found, in agreement with the Trial Examiner, that the respondent C & C Packing Company violated sections 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a) (5) and (1), by refusing to bargain with the Union. The case is before the Court upon the Board's petition to enforce its order pursuant to section 10(e) of the Act, 29 U. S.C. § 160(e).

In an effort to organize the production and maintenance employees at the Company's plant, the Union signed up the necessary 30 per cent of the employees and petitioned the Board for a representation election. At the meeting called to process this petition, the attorney for the Company asked if the Union would withdraw its representation petition if it could prove it had a majority of the employees.

The Union's petition was withdrawn and it agreed to the card check procedure which involves counting the total number of employees who have signed a card authorizing the Union to represent them, and comparing this number with the total number of employees in the bargaining unit to determine whether 51 per cent of the employees have authorized Union representation.

The Federal Mediation and Conciliation Service suggested William Halloran, a retired mediator, to run the check and he agreed to serve. The Union suggested April 12th for the card check, but, at the request of the Company's attorney, the date of April 14th was selected to permit the Company's secretary-treasurer to attend. The meeting began at the office of the Company's attorney and adjourned to the Federal Mediation Service offices where Halloran ran the check. He compared the names on the cards given to him by the Union with a typed list of the employees in the bargaining unit furnished by the Company. He found there were 22 employees in the unit and 15 were for the Union. *The Company did not challenge nor question this card check procedure when Halloran asked both sides if there were any problems or challenges.*

The day after the card check meeting, the Company sent a letter to the Union requesting a draft contract so that they would better know what matters to discuss at the meeting scheduled four days later for the purpose of negotiating a contract. The day before this meeting was to take place, the Company sent another letter to the Union indicating that they wanted an election after all, to determine the majority status of the Union before entering negotiations. Again there were no challenges to the validity of the card check in the letter. The at-

* Honorable William M. Byrne, United States Senior District Judge, Los Angeles, California, sitting by designation.

torney who wrote the letter even acknowledged that he realized the letter might take the Union by surprise.

The Union insisted the Company bargain on the basis of its majority status having been determined by the card check and filed this charge with the Board.

The Company now disputes the reliability of the card check. It argues that there was no showing that Halloran read the contents of all the cards; nor was there evidence that the names were written, not printed; nor was there a showing that Halloran had ever seen the signatures of the employees before; that the Trial Examiner erred in limiting testimony on the validity of the cards to the authenticity of the signatures and to whether the employee was told the cards were to be used only to have an election; that, even assuming that the Union represented a majority, the Company had a good faith doubt of its majority status, and that the Trial Examiner was partisan.

 The Board agrees that the authorization cards must represent the intent of the signers. N.L.R.B. v. Dan Howard, 7 Cir., 390 F.2d 304. If the cards were signed to get an election, and not to authorize the Union to be the bargaining representative, then they were invalid. N.L.R.B. v. Winn-Dixie Stores, Inc., 6 Cir., 341 F.2d 750. The Board reasons, however, that as the Company agreed to the card check as a substitute for the representation election, it cannot now go back and attack the card check procedure. The Trial Examiner found that the Company suggested the card check and did not reserve a "right" to request an election in the event they were dissatisfied with the result of the card check. This finding is based upon substantial evidence and meets the Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, standard.

 Halloran testified that at the card check there was no statement made to the effect that the card check was not to be used to determine the Union's majority status. Allen, a Union representative, testified that there was no discussion concerning the retained "right" to an election. The Trial Examiner credited this testimony over that of Gigounas, an attorney for the Company, that there was such a reservation.

The Trial Examiner limited the testimony concerning the validity of the cards to whether the signature was authentic and as to whether the employee was told the cards were to be used only for an election.

In Snow v. N.L.R.B., CA 9, 308 F.2d 687, the employer agreed to a card check. A minister compared the signatures on the authorization cards to signatures on W-2 forms supplied by the employer and found the Union had a majority. After the card count the employer still refused to bargain, claiming a good faith doubt of the Union's majority status. The Court held that the employer's failure to question the manner in which the signatures were obtained vitiated its claim of a good faith doubt. The instant case falls squarely within *Snow.*

In *Snow,* both the employer and the Union chose the clergyman who ran the check and he compared signatures, not just names. In our case, Halloran was selected by the Union upon the suggestion of the Federal Mediation and Conciliation Service, and he compared the signatures with the typewritten list of employees furnished by the Company. If it wanted signatures compared, it could have supplied W-2 forms as did the employer in *Snow.* It must also be remembered that the Company made no objection to the card check, to the validity of the cards, nor to Halloran, despite the fact that Halloran, at the conclusion of the check, specifically asked if either side had any challenges.

The Trial Examiner carefully analyzed the conflicting testimony and there is no merit to the claims that he was partisan.

Enforcement of the order of the Board is granted.